Harold V. BEIGHLEY, et al.,
Plaintiffs–Appellants,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, Etc., et al.,
Defendants–Appellees.

No. 88–1257.

United States Court of Appeals,
Fifth Circuit.

March 29, 1989.
Rehearing Denied April 27, 1989.

Thomas W. George, D.J. Powers, Austin, Tex., Johnny Roy Phillips, Seminole, Tex., for plaintiffs-appellants.

Harold H. Pigg, Scott W. Sharp, Brock, Morton & Pigg, Lubbock, Tex., for defendants-appellees.

Before KING, WILLIAMS and SMITH, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

The obligor on a promissory note, Harold V. Beighley, appeals a summary judgment in favor of the Federal Deposit Insurance Corporation (FDIC). The district court determined that, as a matter of law, the obligor could not assert claims against the FDIC arising from the alleged breach of an unwritten, collateral agreement between the obligor and the lender, an insolvent bank. The FDIC had substituted in the lawsuit as the receiver of the failed institution. The court also ruled in favor of the FDIC, as holder of the promissory note, on its counterclaim to enforce the obligation. We affirm.

### I. *Facts*

Appellants Dr. and Mrs. Harold V. Beighley and El Rancho Pinoso, Inc., a closely held corporation controlled by the Beighleys, were long standing customers of Moncor Bank, N.A., of Hobbs, New

Mexico ("Moncor" or "the bank").[1] In January, 1984, Dr. Beighley signed a $932,000 renewal note of El Rancho Pinoso's indebtedness, assuming the obligation in his individual capacity. The note was secured by various real estate holdings, including a second mortgage on a ranch in Tucumcari, New Mexico (the Tucumcari property) and a deed of trust on a farm in Gaines County, Texas (the Gaines County property).[2]

The renewal note was executed pursuant to a plan to consolidate and reduce Beighley's total indebtedness. In a letter agreement which was accepted and approved by the bank, Beighley stated that "in connection with the retirement of a portion of my personal indebtedness to you, I have agreed to initiate efforts to liquidate certain assets owned by the corporation." This letter made specific reference to the Tucumcari and Gaines County properties. The agreement to sell this collateral property and use the proceeds to retire the debt was reflected in the bank's records and was approved by the bank's Compliance Committee.[3]

Beighley contends that the bank also agreed to finance a third party purchase of the collateral property once Beighley had located a creditworthy buyer. The bank's alleged breach of an agreement to fund the purchase of the collateral property is the cornerstone of this litigation.

It is clear that Moncor encouraged Beighley to sell the collateral property and cooperated with him to achieve this goal. The bank was involved in negotiations with buyers for both the Tucumcari and Gaines County tracts. Indeed, the bank issued written loan commitments to prospective purchasers of both properties. The record indicates that the bank's attorney had drafted all of the documents necessary for a closing on the Gaines County property, which was scheduled for August 23, 1985. On the day before the closing, Moncor informed the parties that the deal would not go through.[4]

## II. *Prior Proceedings*

On August 30, 1985, one week after the scheduled closing, Beighley filed suit against Moncor Bank in state court in Gaines County, Texas, alleging causes of action for breach of contract, breach of fiduciary duty, promissory estoppel, and fraud, arising from Moncor's alleged

1. Moncor Bank is the successor to the First City National Bank of Hobbs, New Mexico. The promissory note that gave rise to this lawsuit was an agreement between Dr. Beighley, individually, and the First City National Bank. It was Moncor Bank, however, who held the note and was named a defendant at the time this suit was filed. Because the note is an individual obligation, we refer to the appellants collectively as "Beighley".

2. The renewal note was to be paid in a single payment due July 16, 1984. Beighley paid a portion of the obligation, reducing the amount due to $711,416. The bank extended the maturity date of the note at least twice during negotiations for the sale of the collateral property.

3. A loan approval and funding sheet in the bank's records, executed by Michael H. Fisher, executive vice president, states that the purpose of the loan was to "renew corporate debt into an individual name to correct holding and provide customer with opportunity to liquidate debt." The document indicated that the primary source of repayment for the loan was the sale of real estate property.

   The minutes of the Compliance Committee that approved the loan renewal state that:

[t]he purpose of this loan is to renew corporate debt into individual name and to give the bank time to clear up title exceptions on the property and allow customer time to begin liquidation of assets. This renewal will also give the bank additional collateral and strengthen our loan to El Ranch Pinoso, Inc. Had this renewal not been made, our equity position would have been threatened.

4. In deposition testimony, bank officials stated that the loan to a third party to purchase the Gaines County property was not closed because it exceeded Moncor Bank's loan limits, which had dropped during the time that the transaction was being negotiated because the bank had been placed on the troubled bank list. Beighley contends that, under standard banking practice, a loan which exceeds these limits can be partially farmed out to correspondent banks who will participate in the loan, thus circumventing this problem. As will be made clear in our discussion below, this dispute is irrelevant to the grounds upon which the district court granted summary judgment. Under the lower court's ruling, Beighley could not prevail even if this fact issue had been resolved in his favor. Thus, Moncor's reason for refusing to close are not at issue on appeal. *See infra* Section IV.

breach of an agreement to finance the purchase of the collateral property. Moncor was served in New Mexico within an hour after the suit was filed. Two hours later, the bank was declared insolvent and was taken over by the FDIC as receiver.

On September 20, 1985, Beighley filed an amended petition in the state court. The amended petition made no reference to the fact that Moncor Bank had been declared insolvent and was taken over by the FDIC on the same date that the original petition was filed. The certificate of service stated that a copy of the amended petition was sent to the bank by certified mail, but no proof of service appears in the record. It is undisputed that the FDIC was *not* served with either the original or amended petition.

On September 25, the Texas state court entered a default judgment against Moncor because the bank had failed to file a timely answer. The state court heard no evidence in the case, and was completely unaware that the FDIC, which had never been served, was acting as a receiver for the failed bank.[5]

One month after the default judgment was entered, the FDIC filed a notice of substitution of parties, and entered the lawsuit in place of the failed bank. The FDIC also filed a motion to vacate the state court judgment and a motion for new trial. Although a hearing on these motions was scheduled, the state court never ruled on them because the FDIC removed the action to the United States District Court for the Northern District of Texas before the hearing date.[6] Beighley moved for remand on the grounds that the petition for removal was untimely and the FDIC had waived its right to remove. The motion was denied by the federal district court.

On July 30, 1986, the federal district court set aside the state court default judgment pursuant to the FDIC's motion for relief from judgment under Fed.R.Civ.P. 60(b). The court determined that the FDIC, as receiver of the failed bank, was an indispensable party to the suit. Failure to make it a party or serve it with pleadings was alone sufficient to set aside the state court default judgment. The court also concluded that "the 106th Judicial District of Gaines County, Texas was without any jurisdiction of the parties or the subject matter under the facts and record in this case, and the default judgment must be set aside."

The FDIC, acting in its corporate capacity as holder of the note, raised Beighley's obligation on the promissory note as a counterclaim in federal court.[7] On Decem-

---

**5.** After reviewing this timetable and hearing testimony regarding the circumstances under which the state court suit was filed, a federal district court later concluded that:

> It is obvious to the court that the suit was filed in Gaines County, Texas against the Moncor Bank in order to avoid causes of action or defenses that could be asserted by the receiver. It is more than a coincidence, although the existence of fraud is not proven by the record.
>
> Further, it is obvious that the plaintiffs were aware of the impending receivership of Moncor Bank, if not at the time of the filing of the original petition in Gaines County, Texas, certainly they were aware of it when the first amended petition was filed shortly before the entry of the default judgment. Counsel for plaintiffs, in oral argument, admitted that 'rumors' had been circulating for months about the bank's financial condition.
>
> The district court also found that the amended petition was filed without permission of the state court within seven days of the date of trial, in violation of Tex.R.Civ.P. 63. *Beighley v. Fed.*

*Deposit Ins. Corp.,* No. CA–5–85–324, slip op. at 2–3 (N.D.Tex. July 30, 1986) (Opinion and Order setting aside state court judgment).

**6.** The FDIC removed the action to federal court pursuant to 12 U.S.C. § 1819 (Fourth) (1982). This statute grants the FDIC special removal powers: it can remove any action without posting bond, whether it is plaintiff or defendant in the lawsuit. *See Franklin Nat'l Bank Sec. Litigation v. Andersen,* 532 F.2d 842 (2d Cir.1976).

**7.** The FDIC is authorized by statute to act in two capacities: as receiver of a failed bank and in its corporate capacity as insurer of bank deposits. The FDIC acts in both capacities in this litigation.

As receiver of Moncor Bank, the FDIC assumed all assets and liabilities of the failed institution. It then entered into a purchase and assumption transaction under which an acquiring bank purchased those assets of Moncor bank that were of the highest banking quality. Other assets that did not qualify, including the Beighley note, were retained by the FDIC receiv-

ber 30, 1987, the district court directed Beighley to submit documents that complied with the statutory requirements for establishing an agreement that would allow him to recover from the FDIC or suffer adverse summary judgment. *Beighley v. Fed. Deposit Ins. Corp. (Beighley I)*, 676 F.Supp. 130 (N.D.Tex.1987). Beighley submitted evidence that the court found insufficient. The court then entered summary judgment in favor of the FDIC. *Beighley v. Fed. Deposit Ins. Corp. (Beighley II)*, 679 F.Supp. 625 (N.D.Tex.1988). The judgment was subsequently amended to provide for attorney's fees. Beighley appeals this adverse summary judgment.

### III. *Jurisdiction*

As a threshold matter, we must determine whether the circumstances surrounding the removal of Beighley's suit to federal district court deprived that court of jurisdiction. Beighley contends that the district court lacked jurisdiction, and the case should therefore be dismissed or remanded to state court. We disagree, concluding that the case was properly removed and the federal district court had the authority to vacate the state court default judgment.

### A. Derivative Jurisdiction Rule

■ Beighley seizes on the federal district court's conclusion that the state court "was without any jurisdiction of the parties or the subject matter under the facts and record of this case" to argue that the federal district court lacked jurisdiction under the derivative jurisdiction rule. Under this common law doctrine, if a state court lacks jurisdiction, the federal court can acquire none upon removal. This is true even if the federal court would have jurisdiction if the suit had originated there. *Arizona v. Manypenny*, 451 U.S. 232, 242 n. 17, 101 S.Ct. 1657, 1665, 68 L.Ed.2d 58 (1981); *Lambert Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922).[8]

■ The answer to Beighley's argument lies in examining the relevant time frame of the district court's decision. The district court determined that the state court did not have jurisdiction *at the time the state court entered default judgment*. In contrast, the removal jurisdiction of the federal court is determined by examining the record as it stands *at the time the petition for removal was filed*. *In re Carter*, 618 F.2d 1093, 1101 (5th Cir.1980), *cert. denied sub nom. Sheet Metal Workers' Int'l Assoc. v. Carter*, 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981). *See also*, 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3721 at 209 (2nd ed. 1985).

We offer no opinion as to whether the district court correctly determined that the Texas court lacked jurisdiction when it entered a default judgment in favor of Beighley. In short, the court's conclusion is simply irrelevant to our concern about the jurisdiction of the state court at the time the petition for removal was filed.[9] When

er. The receiver then sold these assets to the FDIC as insurer, acting in its corporate capacity, in return for funds which were transferred to the acquiring bank. The FDIC corporation attempts to collect on these assets to reduce loss to the insurance fund. For a detailed explanation of this type of transaction, *see Gunter v. Hutcheson*, 674 F.2d 862, 865–66 (11th Cir.1982).

In the present litigation, it is the FDIC *as receiver* of Moncor bank which substituted into the lawsuit to defend against Beighley's claims of breach of contract and fraud. The FDIC *acting in its corporate capacity* is the holder of the Beighley note, and has filed a counterclaim to collect the obligation. When appropriate, we will designate these entities as FDIC–Receiver and FDIC–Corporation. This distinction becomes important when considering the merits of Beighley's claims.

8. This rule is now superseded by statute. 28 U.S.C. § 1441(e) (Supp. IV 1986) permits a federal district court to hear a case removed from state court when the state court did not have jurisdiction over the claim. The statute is effective only for suits filed in state court after June 19, 1986, and thus is inapplicable to this case.

9. We note, by way of illustration, that the Texas court clearly had jurisdiction (at least as to that part of the lawsuit concerning land in Gaines County) for the two hours before Moncor Bank failed. Beighley concedes this point. The federal court's ruling that the state court lacked jurisdiction when it entered a default judgment cannot alter this fact. Similarly, the district court's ruling does not control our examination of the state court's jurisdiction at the time the removal petition was filed.

the FDIC appeared in state court *after* the entry of the default judgment and petitioned to have that judgment set aside, the prior defects that concerned the district court were corrected. By substituting itself into the lawsuit and filing a motion for new trial, the FDIC brought itself within the jurisdiction of the Texas court. *See* Tex.R.Civ.P. 120a. Moreover, there can be no question that the state court had jurisdiction to set aside its own default judgment up until the time that the petition for removal was filed. *Murray v. Ford Motor Co.*, 770 F.2d 461, 463 (5th Cir.1985); Tex. R.Civ.P. 329b(d). So we conclude that the state court did have jurisdiction at the time the petition for removal was filed. Thus, the derivative jurisdiction rule does not apply.

**B. Jurisdiction to Set Aside a State Court Default Judgment**

■ Beighley also contends that a district court cannot acquire jurisdiction over a proceeding removed to federal court that seeks to set aside a state court default judgment. To support this proposition, Beighley relies on the 19th century case of *Barrow v. Hunton*, 99 U.S. 80, 25 L.Ed. 407 (1879). In *Barrow*, the Supreme Court ruled that a federal court cannot acquire removal jurisdiction over a state court action that seeks to set aside a prior state court judgment when the second suit "is a supplementary proceeding so connected with the original suit as to form an incident to it, and substantially a continuance of it." 99 U.S. at 82, 25 L.Ed. at 408.

■ Beighley argues that the FDIC's petition in federal court to set aside the state court judgment is merely supplemental to the state court suit, and thus the federal court cannot acquire jurisdiction under the *Barrow* rule. This argument completely misapprehends the *Barrow* decision. As modern case law makes clear, the *Barrow* rule applies only when an action in federal court seeks to nullify or to enforce the judgment of a *prior* state court suit. *See MacKay v. Pfeil*, 827 F.2d 540 (9th Cir. 1987) (diversity action seeking injunctive and declaratory relief from a prior state

court judgment); *Richmond v. Allstate Ins. Co.*, 624 F.Supp. 235 (E.D.Pa.1985), *mandamus denied* 800 F.2d 1130 (3d Cir. 1986) (removal of garnishment action to execute a prior state court judgment); *Ledgedale of Pennsylvania, Inc. v. Carroll*, 478 F.Supp. 711 (M.D.Pa.1979) (removal of state court action to set aside a sheriff's sale following a state court judgment of foreclosure). Beighley's state court suit, which the FDIC removed, does not follow any other state court proceeding, and is clearly an independent action within the meaning of *Barrow*. The *Barrow* rule simply does not apply to this case.

Moreover, our case law makes clear that a federal district court can have jurisdiction to vacate a state court judgment. *Northshore Development, Inc. v. Lee*, 835 F.2d 580, 583 (5th Cir.1988); *Savell v. Southern Ry. Co.*, 93 F.2d 377 (5th Cir.1937). Indeed, we have expressly approved the practice of setting aside a state court default judgment upon removal to federal court for "mistake, inadvertance, surprise, or excusable neglect" under Fed.R.Civ.P. 60(b). *Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890, 895 (5th Cir.1984). In *Azzopardi*, we concluded that:

> Rule 60(b) is applied most liberally to judgments of default, since trial on the merits is to be favored over such a truncated proceeding. Unless it appears that no injustice results from the default, relief should be granted. Absence of injustice is shown when the defendant cannot come forward with a defense of sufficient merit to raise the possibility of a change of outcome on retrial, which he had no fair opportunity to assert below.

*Id.* (citations omitted).

In the present case, the FDIC has met this standard by raising a meritorious defense in response to the state court default judgment, which was entered without service on the FDIC. The federal district court clearly had the authority to set aside the state court default judgment under the circumstances of this case. Beighley's argument to the contrary is without merit.

## C. Waiver of Right of Removal

■ A common theme running through Beighley's jurisdictional arguments is that the FDIC somehow acted improperly by filing a motion for a new trial in state court and then filing a petition for removal before the state court motion could be heard. Beighley suggests that by its actions in state court, the FDIC has waived its right to remove. This argument is also incorrect.

A waiver of the right of removal must be clear and unequivocal. In general, "the right of removal is not lost by action in the state court short of proceeding to an adjudication on the merits." 1A Moore, Federal Practice ¶ 0.157[9] at 153 (1987). *See also Bedell v. H.R.C. Ltd.*, 522 F.Supp. 732, 738–39 (E.D.Ky.1981) (no waiver by defendant's motion to abate and dismiss in state court, which sought to dissolve a temporary injunction). The FDIC cannot be said to have waived its statutory right to removal simply by taking preliminary steps in state court to set aside a default judgment.

In conclusion, contrary to Beighley's multifarious objections, there is simply nothing erroneous or improper about the FDIC's removal of the state court action. The federal district court had jurisdiction over this suit.

## IV. *Claims and Defenses Asserted Against the FDIC*

We now turn to the merits of Beighley's claims. The district court granted summary judgment for the FDIC–Corporation on its counterclaim to enforce the note, concluding that Beighley's defenses are barred by 12 U.S.C. § 1823(e) (1982). We agree. The court also determined that Beighley's affirmative claims against the FDIC–Receiver, which were the subject of the original state court suit, were precluded by the same statute. We affirm the judgment of the district court. But we conclude that, contrary to the reason advanced by the district court, Beighley's claims against the FDIC–Receiver do not fall under the stat-

---

ute. Instead, they are barred by the *D'Oench, Duhme* doctrine, which is the common law counterpart to § 1823(e).

## A. The Statutory Bar

■ 12 U.S.C. § 1823(e) provides:

No agreement which tends to diminish or defeat the right, title, or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

This statute is a "stout barrier" which defeats any unwritten side agreement that a party attempts to assert against the FDIC–Corporation. *Fed. Deposit Ins. Corp. v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369, 1372 (5th Cir.1988). In a recent decision construing the statute, the Supreme Court noted that the requirements of § 1823(e) are certain and "categorical." *Langley v. Fed. Deposit Ins. Corp.*, 484 U.S. 86, ——, 108 S.Ct. 396, 403, 98 L.Ed.2d 340 (1987).

Beighley contends that the numerous documents he introduced into evidence meet the requirements of the statute, or at the very least raise a material fact issue which precludes summary judgment. In support of this argument, Beighley notes that the district court concluded that "there is little doubt that when the exhibits are read together the agreement upon which plaintiffs rely can be inferred." 679 F.Supp. at 627.[10] After carefully review-

---

10. The court also stated, however, that it "[did] not agree ... that the [alleged] agreement is indisputably present in the documents. Rather,

it is possible to infer the agreement from the documents. It is also possible to read the documents without deriving any inference of agree-

ing the record, however, we agree with the district court that Beighley's evidence of the alleged agreement does not meet the categorical requirements of § 1823(e).

Beighley has introduced into evidence numerous documents, some of which were executed contemporaneously with the note and many of which were part of the bank's official records. But not a single document or documents states in writing that Moncor Bank agreed with Beighley to finance a creditworthy buyer to purchase the Gaines County and Tucumcari properties.[11] Moreover, while it is clear that the bank cooperated with Beighley in his attempt to sell the collateral property, any inference one might derive from this fact does not meet the requirements of § 1823(e). *See Fed. Deposit Ins. Corp. v. O'Neil,* 809 F.2d 350, 352–53 (7th Cir.1987) ("implicit" agreement cannot be enforced against the FDIC–Corporation under § 1823(e)). Finally, the fact that Moncor Bank issued written loan commitments to third party purchasers and drew up documents for a closing on the Gaines County property does not establish, within the requirements of § 1823(e), that Moncor promised *Beighley* that it would finance these purchases. In short, "these arrangements and understandings may have been convenient for the parties ... but they were not reflected in [the bank's] records" and were not in writing. *Fed. Deposit Ins. Corp. v. Venture Contractors, Inc.,* 825 F.2d 143, 150 (7th Cir.1987) (quoting *Fed. Deposit Ins. Corp. v. Powers,* 576 F.Supp. 1167, 1171 (N.D.Ill.1983), *aff'd,* 753 F.2d 1076 (7th Cir.1984)). Thus, the alleged agreement does not meet the requirements of § 1823(e).

We have consistently held that "12 U.S.C. § 1823 applies ... to make irrelevant the assertion against the corporate ment." *Beighley v. FDIC,* No. CA–5–85–324, slip op. at 2, n. 1 (N.D.Tex. Apr. 4, 1988) (Denial of Motion for Reconsideration).

FDIC of any unwritten side agreements *such as the agreement to make future loans." Fed. Deposit Ins. Corp. v. Lattimore Land Corp.,* 656 F.2d 139, 142 (5th Cir. Unit B 1981) (emphasis added). *See also In re CTS Truss, Inc.,* 859 F.2d 357, 361–62 & n. 7 (5th Cir.1988) (alleged agreement to extend additional financing); *Black v. Fed. Deposit Ins. Corp.,* 640 F.2d 699 (5th Cir. Unit B 1981), *cert. denied,* 454 U.S. 838, 102 S.Ct. 143, 70 L.Ed.2d 119 (1981) (same); *Chatham Ventures, Inc. v. Fed. Deposit Ins. Corp.,* 651 F.2d 355 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982) (same). These cases are clearly controlling. We affirm the summary judgment in favor of the FDIC–Corporation on its counterclaim to collect on the promissory note signed by Beighley.

## B. The *D'Oench, Duhme* Doctrine

The district court also held that § 1823(e) precluded Beighley's affirmative claims against the FDIC–Receiver that were the subject of the original state court action. By its terms, the statute applies to the FDIC "Corporation." We have determined that § 1823(e) is not available as a bar to claims or defenses against the FDIC when it is acting in its capacity as receiver. *Fed. Deposit Ins. Corp. v. McClanahan,* 795 F.2d 512, 516 (5th Cir.1986). The district court therefore erred in holding that the statute defeats Beighley's affirmative claims for relief that were originally filed against Moncor Bank but now are asserted against the FDIC–Receiver. *See supra* note 7.

We nevertheless affirm the summary judgment of the district court in favor of the FDIC–Receiver under the common law counterpart of § 1823(e). Even before

11. Many of the seventy-one documents introduced into evidence are routine bank records that simply make reference to the outstanding Beighley loan. For example, Beighley entered into evidence the minutes of the weekly meetings of Moncor Bank's Senior Executive Committee from April 12, 1985 to August 23, 1985.

Each set of minutes contained a list of past due commercial loans over $100,000, and Beighley's outstanding loan was duly noted on each weekly list. Beighley is correct in stating that these documents are official bank records. But they simply are not, by any stretch of the imagination, a written agreement executed contemporaneously with the loan which states that Moncor Bank promises Beighley that it will finance the third party purchase of the collateral property.

Congress enacted § 1823(e), the FDIC enjoyed substantial protection from oral side agreements, not reflected in a bank's records, that would diminish the FDIC's interest in an asset. The fountainhead of this doctrine is the Supreme Court's opinion in *D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The Court held that an obligor who "lent himself to a scheme or arrangement" that was likely to mislead bank examiners may not assert against the FDIC any part of an agreement that might diminish the value of his written loan obligation. *D'Oench, Duhme*, 315 U.S. at 460, 62 S.Ct. at 681.

Courts often consider the *D'Oench, Duhme* doctrine and § 1823(e) in tandem, looking to the common law when construing the statute. *See, e.g., Langley v. FDIC*, 108 S.Ct. at 401–02 (adopting a broad construction of the term "agreement" in § 1823(e) as most consistent with "the principle of the leading case [*D'Oench, Duhme*]"); *FDIC v. Cardinal Oil*, 837 F.2d at 1372 and n. 3 (applying both statute and common law); *Fed. Deposit Ins. Corp. v. de Jesus Velez*, 678 F.2d 371, 375 (1st Cir.1982) (same); *Chatham Ventures v. FDIC*, 651 F.2d at 361 (adopting language of *D'Oench, Duhme* to explain a statutory requirement). But one important distinction is clear: unlike § 1823(e), the *D'Oench, Duhme* doctrine applies when the FDIC is acting as receiver, and thus is relevant to Beighley's affirmative claims. *McClanahan*, 795 F.2d at 516, *Fed. Deposit Ins. Corp. v. First Nat'l Finance Co.*, 587 F.2d 1009, 1012 (9th Cir.1978).

The *D'Oench, Duhme* decision involved a complicated "secret agreement" designed to deceive banking authorities. A note had been signed with the understanding that it would not be called for payment. The doctrine "has been extended considerably by the courts" since the 1942 decision. *In re CTS Truss*, 859 F.2d at 362, n. 8. Thus, while the borrower in the *D'Oench, Duhme* decision knowingly participated in a fraudulent scheme, the doctrine now applies even when the borrower does not intend to deceive banking authorities. *Taylor Trust v. Security Fed. Savings & Loan Assoc.*, 844 F.2d 337, 342 (6th Cir.1988). Similarly, the underlying transaction need not be fraudulent for *D'Oench, Duhme* to defeat the borrower's claims. *Id.* (borrower pledged trust account as collateral to secure financing); *FDIC v. Cardinal Oil*, 837 F.2d at 1370 (borrower failed to revoke unconditional guaranty covering future loans).

The test for the application of the *D'Oench, Duhme* doctrine is whether the borrower "lent himself to a scheme or arrangement" whereby banking authorities are likely to be misled. *D'Oench, Duhme*, 315 U.S. at 460, 62 S.Ct. at 681; *McClanahan*, 795 F.2d at 517. We have found that "if [an] obligor may assert oral side agreements reducing the value of assets formerly held by the bank, then the FDIC would be misled." *Chatham Ventures*, 651 F.2d at 361. We recently applied the *D'Oench, Duhme* doctrine to defeat an attempt by the makers of a note to escape liability by asserting that the lender violated an oral agreement to fund additional loans. *Federal Savings & Loan Ins. Corp. v. Murray*, 853 F.2d 1251, 1255 (5th Cir.1988).

■ In the present case, the alleged agreement upon which Beighley relies is not in writing. Like the agreement in *Murray*, Moncor's alleged oral agreement to finance future loans is not clearly evidenced in the bank's records, and would not be apparent to bank examiners. Such an unwritten, unrecorded agreement is "simply [a] secret side agreement[ ] that the Court invalidated almost fifty years ago in *D'Oench*." *Id.* We affirm the judgment of the district court that Beighley cannot assert against the FDIC–Receiver any claims arising from Moncor's alleged breach of an unwritten agreement to finance a third party purchase of Beighley's collateral property.[12]

12. In the courts below, Beighley asserted claims against Moncor Bank and the FDIC–Receiver for breach of contract, fraud, breach of fiduciary duty, promissory estoppel, and breach of agency contract, all arising out of Moncor's alleged breach of an agreement to finance the

## V. *Additional Issues*

As a final challenge to the judgment below, Beighley raises two additional arguments. First, Beighley contends that the court's summary judgment grant of attorney's fees to the FDIC was improper because Beighley had raised a material fact issue regarding the amount and reasonableness of these fees. Second, Beighley argues that the district court improperly denied his jury demand as untimely, and thus the entire case should be remanded for a jury trial. We reject both claims.

### A. Attorney's Fees

■■■ The promissory note on which judgment was granted provided for the recovery of "all costs of collection and of all legal proceedings, including but not limited to reasonable attorney's fees of not less than ten percent of the balance due on the note." That balance was $711,416. Applying Texas law, the district court determined

that the FDIC was entitled to recover only its actual legal fees and expenses totalling $52,018, which the court concluded was a reasonable charge.

Beighley, through the affidavit of his attorney, contested the reasonableness of the attorney's fees submitted by the FDIC. Beighley contends that he has therefore raised a genuine issue of material fact which precludes summary judgment on this issue. Beighley asks this Court to reverse the award of attorney's fees and remand for a trial on the issue of the amount and reasonableness of the FDIC's attorney's fees.

Under Texas law,[13] "a trial court has discretion in fixing the amount of attorney's fees." *Caldwell & Hurst v. Myers*, 714 S.W.2d 63, 65 (Tex.App.—Houston [14th Dist.] 1986, writ ref. n.r.e.). It follows that Beighley is incorrect in arguing that the amount and reasonableness of the FDIC's attorney's fees is a material fact

purchase of the collateral property. *See Beighley I*, 676 F.Supp. at 131. On appeal, Beighley also contends that he is entitled, as a creditor of the failed bank, to a ratable distribution of the bank's assets held by the FDIC–Receiver under 12 U.S.C. § 194 (1982). Beighley raises this argument for the first time on appeal. We will consider an issue on appeal that was not first presented to the district court only if the issue is purely legal, and if refusal to consider it would result in a miscarriage of justice. *C.F. Dahlberg & Co. v. Chevron U.S.A., Inc.*, 836 F.2d 915, 920 (5th Cir.1988); *In re Goff*, 812 F.2d 931, 933 (5th Cir.1987). Such an exception is not warranted in this case.

Beighley further argues that he is entitled to recovery against the FDIC under a common law right to set off mutual obligations arising out of the same transaction, citing *Scott v. Armstrong*, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059 (1892). Beighley did not expressly argue this theory in the court below, although he did plead an equitable right to a set-off in his complaint. The FDIC, however, addressed the merits of this claim in a brief before the district court. We therefore find that the issue was raised in the court below, and can be considered on appeal.

Turning to the merits of this question, we find that Beighley is not entitled to set off his claim against the FDIC–Receiver against the note held by the FDIC–Corporation. First, for reasons stated above, Beighley has no valid claim to offset because he is not entitled to assert the alleged agreement to fund additional loans against the FDIC–Receiver. In addition, even if Beighley had a claim against the failed bank

which could be asserted against the FDIC–Receiver, recovery on this claim would be limited to the assets of the failed bank. Beighley would not be entitled to assert this claim as a set-off against the FDIC–Corporation. *See Fed. Deposit Ins. Corp. v. Willis*, 497 F.Supp. 272, 278 (S.D. Ga.1980); *Fed. Deposit Ins. Corp. v. Vogel*, 437 F.Supp. 660, 663 (E.D.Wis.1977). While an exception to this rule may be available when the FDIC–Receiver negotiates a purchase and assumption transaction without leaving adequate assets in receivership to pay the unassumed creditors' claims, *see, e.g., Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538, 541–42 (9th Cir. 1987), the record contains no such claim by Beighley in this case.

**13.** Perceiving that New Mexico law might be more favorable to his argument that the district court's award of attorney's fees was improper, Beighley also contends that the lower court erred in applying Texas law. According to Beighley, New Mexico is the *only* forum with a significant relationship to the substantive issues in this lawsuit, and thus New Mexico law must control the award of attorney's fees.

We need not decide this question because Beighley raises this argument for the first time on appeal. Indeed, Beighley chose to file suit in Texas state court, specifically pleaded causes of actions under Texas statutes, and cited Texas law in opposing the judgment of attorney's fees in the court below. We therefore will not entertain his argument, raised for the first time on appeal, that only New Mexico law can be applied in this dispute. *See supra* note 12.

issue which must be tried. Moreover, we find that the trial court did not abuse its discretion in awarding the FDIC $52,018 in attorney's fees. The court awarded *less* than the amount provided for in the note. In doing so, the court carefully analyzed and correctly followed Texas state court decisions. *See, e.g., RepublicBank Dallas, N.A. v. Shook,* 653 S.W.2d 278, 282 (Tex. 1983); *Hernandez Construction & Supply Co. v. Nat'l Bank of Commerce,* 578 S.W. 2d 675, 676–77 (Tex.1979). We affirm the district court's award of attorney's fees.

### B. Jury Demand

■■■ Beighley finally contends that the district court improperly refused his demand for a jury trial. The court denied Beighley's request as untimely. Beighley ask us to reverse the court's ruling and remand the entire case for a jury trial.

We need not decide whether the district court's ruling on Beighley's jury demand was correct because we agree with the court's determination that summary judgment was appropriate on all of Beighley's claims and defenses. Beighley failed to raise any genuine issue of material fact, and the court correctly determined that the FDIC was entitled to judgment as a matter of law. Thus, there was nothing for a jury to decide. Under these circumstances, the denial of Beighley's jury demand, if error at all, was harmless error. *Bowles v. United States Army Corps of Engineers,* 841 F.2d 112, 117 (5th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 33, 102 L.Ed.2d 13 (1988); Fed.R.Civ.P. 61.

### VI. *Conclusion*

We conclude that the district court properly granted summary judgment for the FDIC–Corporation on its counterclaim to enforce the promissory note. Beighley's evidence of the alleged agreement to fund additional loans, which he asserted in his defense, was legally insufficient under 12 U.S.C. § 1823(e).

We also affirm the judgment of the district court that Beighley was not entitled, as a matter of law, to recover on his affirmative claims for relief against the FDIC–Receiver. We conclude, however, that these claims are not barred by statute, but instead are the type of oral, collateral agreement that courts have long refused to enforce against the FDIC under the *D'Oench, Duhme* doctrine.

AFFIRMED.