559 So.2d 148 (1990)
T.A. GRANT, III, et al., Plaintiffs/Respondents,
v.
FEDERAL LAND BANK OF JACKSON, et al., Defendants/Applicants.
No. 21648-CW.
Court of Appeal of Louisiana, Second Circuit.
April 4, 1990.
Writs Denied May 25, 1990.
*149 Theus, Grisham, Davis & Leigh by J. Michael Hart, Monroe, for T.A. Grant, III. Christovich and Kearney by William K. Christovich, Kevin R. Tully, James Paxton, New Orleans, for Suzanne Brunazzi Grant. Shafto & Ashbrook by L. Michael Ashbrook, *150 Kimberly O. Golden, Monroe, for James C. Steele, III.
Milling, Benson, Woodward, Hillyer, Pierson & Miller by James K. Irvin, Jean M. Sweeney, Edward J. Pointer, New Orleans, for defendants/applicants.
Before HALL, C.J., and SEXTON and HIGHTOWER, JJ.
HALL, Chief Judge.
Applicant filed a motion for summary judgment alleging that as a matter of law respondents could not assert their claims against it, and that it was entitled to judgment on its reconventional demand, which sought to enforce the respondent's obligation on promissory notes by foreclosure on mortgages. The district court denied the motion and applicant applied to this court for a supervisory writ, which was granted. We now reverse the trial court's denial of the motion and remand to the district court to enter judgment in favor of applicant.

FACTS AND PROCEDURAL HISTORY
Respondents, T.A. Grant, III, Suzanne Brunazzi Grant and James C. Steele, III (hereinafter sometimes referred to as "The Grants" or "Grants"), filed a "lender liability" suit against the Federal Land Bank of Jackson (FLBJ), three of the land bank's officers, the Federal Land Bank Association of Monroe (FLBA) and its president, asserting that the FLBJ had breached an agreement which would have allowed the respondents to sell certain mortgaged property and apply the proceeds to the debt. They sought an injunction preventing the foreclosure on the mortgaged property and further breaches of the agreement, damages, and an order compelling the FLBJ to release certain collateral such that it could be sold and the proceeds applied to respondents' loan debt. The FLBJ answered and filed a reconventional demand seeking to collect on promissory notes issued to the bank by respondents and foreclosure on mortgages securing the notes. Subsequently, the FLBJ was placed in receivership by the Farm Credit Administration (FCA) and REW Enterprises, Inc. (REW), applicant, was appointed as receiver. REW was substituted for the FLBJ as a party to the litigation.
Initially, respondents borrowed $15,000,000 from the FLBJ to help fund the purchase of 36,000 acres of immovable property. The loan is evidenced by a promissory note dated July 12, 1983 and is secured by a mortgage on approximately 16,000 acres of the immovable property and a pledge of 150,000 shares of FLBA stock.
Another loan[1] of $1,500,000 was made to the respondents which is evidenced by a promissory note dated July 30, 1985. This note is secured by the pledge of additional shares of FLBA stock and a collateral mortgage package on additional immovable property.
Respondents, unable to make payment on the January 1986 loan installments, were sent a notice threatening foreclosure on the mortgages if installments were not timely paid. The Grants and Steele responded to the notice by initiating the instant action, which REW seeks to have dismissed by summary judgment.

REW'S MOTION FOR SUMMARY JUDGMENT
REW contends that the claims asserted by the respondents cannot be maintained against it as a matter of law. It relies on the United States Supreme Court case of D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed 956 (1942), and its progeny in support of its motion. The district court ruled that REW was not sufficiently similar to the FDIC or FSLIC to take advantage of the doctrine espoused in D'Oench, and since genuine issues of material fact remained the motion for summary *151 judgment was denied. It is that ruling which is at issue in this supervisory writ.

D'OENCH AND IT'S PROGENY
In D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, supra, the maker of a facially valid promissory note attempted to defend a suit by the FDIC for collection on the note with the defense of failure of consideration. The maker alleged that the note was given with the understanding that it would not be collected. The Supreme Court found that there was a public policy protecting the FDIC, as the regulator and insurer of national financial institutions, from "secret agreements," because to allow the assertion of "secret agreements," i.e. agreements executed outside the face of the banking institutions records and assets, against the FDIC would thwart the FDIC's function in overseeing and regulating the financial institutions. Therefore, since the maker had "participated in" a scheme which deceived the regulatory authority in that he gave a note facially valid but which in fact had a false status, he was estopped from asserting his defense against the FDIC. Thus, the FDIC was protected in relying on the records and documentation of the financial institution which in D'Oench indicated that the promissory note was an asset of the bank.
Since D'Oench, Congress has codified the policies enunciated in that case at 12 U.S.C. § 1823(e). Although the holding of D'Oench applies to the FDIC when acting in its corporate capacity, later jurisprudence has applied the statutory authority in protecting the FDIC in its corporate capacity and the common law rule of D'Oench in protecting the FDIC in its capacity as receiver.[2]Beighley v. Federal Deposit Insurance Corporation, 868 F.2d 776 (5th Cir.1989); Federal Deposit Insurance Corporation v. McClanahan, 795 F.2d 512 (5th Cir.1986).
D'Oench has been revisited on numerous occasions since its inception in 1942. Over the years it has enjoyed expanded application both in terms of which institutions enjoy its protection and in terms of what it protects against.
The Federal Savings & Loan Insurance Corporation was extended D'Oench protection in the case of Taylor Trust v. Security Trust Federal Savings and Loan Association, 844 F.2d 337 (6th Cir.1988). The United States Fifth Circuit adopted the ruling of Taylor Trust, supra, in Federal Savings and Loan Insurance Corporation v. Murray, 853 F.2d 1251 (5th Cir. 1988), finding that D'Oench protected against arrangements likely to deceive a federal regulatory authority. Because the FSLIC was sufficiently similar in function to the FDIC, the court held that it was entitled to D'Oench protection.
Not only have the FDIC and FSLIC enjoyed the protection of D'Oench, but in Bryan v. Bartlett, 435 F.2d 28 (8th Cir. 1970), the receiver appointed by the Securities Exchange Commission of an insolvent financial services corporation was extended protection by way of analogy. In that case, officers of the failed institution had given promissory notes to the institution. They were estopped from denying the validity of those notes in that suit. The court stated, "the receiver, while not a federal corporation, is an officer of a federal court appointed because of violations of federal law. The policy underlying the federal Securities Act of 1933 is to protect investors from the fraudulent sale of securities and the common loss of investment which follows from violation of the act. In unsnarling the tangled affairs of these corporations to preserve insofar as possible assets for distribution to the defrauded investors, the receiver is performing a federal function." Thus, the court applied federal law and went on to hold that D'Oench applied by analogy since deception was carried out on a regulatory official.
*152 Substantively, D'Oench has evolved such that the test of application is whether the borrower lent himself to a scheme or arrangement likely to mislead banking authorities. Beighley, supra at p. 784. In essence, a debtor will be estopped from asserting in a suit on a note any separate agreement between the lender and borrower which contradicts the written terms of the loan documentation. The D'Oench doctrine prevents defenses such as lack of consideration, fraud by bank officials, agreements made in good faith by borrowers, and assertions that course of dealing has altered the loan agreement. See, D'Oench, supra; Beighley, supra; Mainland Savings Association v. Riverfront Associates, Ltd., 872 F.2d 955 (10th Cir.1989); Murray, supra; Federal Savings & Loan Insurance Corporation v. Lafayette Investment Properties, 855 F.2d 196 (5th Cir.1988); McClanahan, supra; Federal Deposit Insurance Corporation v. Hatmaker, 756 F.2d 34 (6th Cir.1985).
In Murray, supra, the borrowers were loaned 3.6 million dollars by Alliance Federal Savings & Loan Association to finance the purchase of real estate for commercial development. The borrowers formed a partnership but signed the promissory note in their individual capacities. Alliance was taken over by the FSLIC who sued the individuals on the promissory note. The borrowers defended the suit on several grounds including that Alliance had violated side oral agreements and that Alliance had fraudulently altered the notes. The borrowers contended that Alliance had misrepresented that it would fund additional loans or extend the term of the interest reserve and that it would release certain borrowers from liability once they sold their share of the partnership. The court barred the defenses, stating that the assertion of oral side agreements had been invalidated almost 50 years ago in D'Oench. The court also barred the borrowers' defense based on the association's fraudulent alteration of the note.
In Lafayette Investment Properties, supra, defendant endorsed and guaranteed a note made payable to Sunbelt Bank by Lafayette Investment Properties. Defendant asserted that officials at Sun Belt assured him that his liability on the note would terminate when certain loan documents were completed and delivered to the bank. No written statement evidencing such an agreement was ever made and D'Oench barred the defense.
The United States Tenth Circuit has barred claims of intentional fraud, gross negligence, reckless conduct, breach of an agreement to fund, and breach of an implied covenant of fair dealing, which were asserted by borrowers against the FSLIC acting as receiver for Mainland Savings Association. Mainland Savings Association v. Riverfront Associates, Ltd., supra. The borrower's primary contention in that case was that Mainland reneged on a promise to fund a second loan sufficient to pay the first. The court relied on D'Oench to protect the FSLIC from "undisclosed agreements." Further, Riverfront alleged that its agreement was memorialized in the loan documentation of Mainland. The court looked at the note, accompanying security agreement and other documents pertaining to the transaction and determined that nothing in those documents evidenced any type of conditional promise or side agreement.

REW, BENEFACTOR OF D'OENCH
The primary issue in this appeal is whether REW is entitled to D'Oench protection. The district court found that REW was not sufficiently similar to the FDIC or FSLIC to warrant the application of D'Oench in this case.
The Farm Credit Administration appointed REW as receiver of this failed national land bank. The FCA is an independent agency in the executive branch of the federal government. 12 U.S.C. § 2241. The Farm Credit Administration Board (FCAB) administers and establishes policies of the FCA. 12 U.S.C. § 2243. The chairman of the FCA Board is the chief executive officer of the FCA. 12 U.S.C. § 2244. The powers of the FCA, enunciated at 12 U.S.C. § 2252, enable the administration to supervise the stability and condition of institutions *153 in the Farm Credit System, which included this failed institution. The FCA makes reports to Congress on the condition of those institutions and determines the rules and regulations which govern those institutions. In fact, the powers of examiners of Farm Credit System institutions are co-extensive with the powers given FDIC and FSLIC examiners. 12 U.S.C. § 2254. In overseeing the institutions in the Farm Credit System, the FCA functions similarly to the FDIC and FSLIC as overseers of the banking and thrift institutions. See and compare, 12 U.S.C. § 1819; 12 U.S.C. § 1820, 12 U.S.C. § 1821; 12 U.S.C. § 1725(c), 12 U.S.C. § 1729; 12 U.S.C. § 2252; 12 U.S.C. § 2254; 12 U.S.C. § 2255; 12 U.S.C. § 2256; 12 U.S.C. § 2257 and 12 U.S.C. § 2243. Although there is currently no insurance corporation in place to protect against the failure of a land bank, Congress has devised such a scheme to become operational in 1993. See 12 U.S.C. 2277a-1 et seq.[3]
Even though the FCA does not insure the land banks it regulates, it examines the banks and supervises their financial condition. Through these examinations, the FCA seeks to protect the investors, creditors and debtors of the land bank by insuring that the bank is sound. In this case, the land bank was determined to be insolvent and REW was appointed receiver pursuant to 12 U.S.C. § 2183. The FCA's appointment of REW differs from the FDIC's or FSLIC's appointment of a receiver only in that the FDIC and FSLIC must appoint themselves as receiver in the case of failed national banks or thrifts. 12 U.S.C. § 1821(c)(2)(A)(ii), 12 U.S.C. § 1729(b)(1). However, the FCA has provided for the powers and duties of receivers of failed Farm Credit System institutions. 12 C.F.R. 611.1161 and 12 C.F.R. 611.1171.
REW contends that it functions similarly to the FDIC and FSLIC as receivers, when it functions as the receiver of a failed federal land bank. A comparison of appropriate statutes and regulations compels us to agree. See and compare 12 C.F.R. 611.1161 and 12 C.F.R. 611.1171 with 12 U.S.C. § 1464(b)(5)(D); 12 U.S.C. § 1729(c)(3)(B); 12 U.S.C. § 1729(b)(1), 12 U.S.C. § 1821(d)(2)(E), and 12 U.S.C. § 1821(c)(2)(B). The function of the FDIC, when acting as receiver for a failed bank, has been explained as "marshalling the assets of the failed bank for the benefit of the bank's creditors and shareholders." A failure of the receiver to recover on an asset of the failed institution results in a loss for the institution's unsecured creditors and stockholders. McClanahan, supra; FDIC v. Hatmaker, supra. REW, like the FDIC and FSLIC, is charged with the responsibility of marshalling the failed land bank's assets, paying the liabilities and protecting, as well as it can, the creditors and stockholders of the failed institution. Since REW is essentially functioning as the FDIC or FSLIC would function as receivers, the failed land bank is a federal banking institution regulated by a federal authority, and that authority appointed REW as receiver, we think that policy dictates that REW receive the protection afforded by application of the D'Oench doctrine.
Though a federal district court ruled that REW was not sufficiently like the FDIC or FSLIC for purposes of removal of this case from state to federal court, we do not find that opinion controlling of our decision today. Whether REW could remove this case to federal court is wholly inapplicable to the issue before us.

RESPONDENTS' AGREEMENT
Respondents assert that even if REW is benefited by the D'Oench doctrine, the facts of this case do not warrant application of D'Oench. Specifically, respondents contend that their agreement is set forth in writing in the loan documentation of the failed bank and thus, the agreement is not "secret." REW strongly contests this assertion.
*154 In the plaintiffs' petition they allege that through discussions and correspondence with officers of the FLBJ and FLBA, an agreement was reached such that the FLBJ agreed to release collateral from the mortgage so that it could be sold and the proceeds applied to the debt. They also allege that in fact the FLBJ had released property, the property was sold, and the proceeds were applied to the debt. Respondents contend that they were led into a "false sense of security" that they would be allowed to continue to service the debt in this manner, but that the FLBJ changed its policy without warning, which led to their default on the loan. This change in policy with regard to releasing collateral is asserted to be a breach of the parties' agreement. Thus, respondents sought to enjoin the FLBJ from foreclosure and sought to force the release of collateral so that it could be sold and the proceeds applied to the debt.
REW asserts that the "agreement" upon which respondents rely is an oral side agreement. REW filed an affidavit with its motion for summary judgment which stated that there was no written agreement altering the terms of the loan documentation. Respondents assert that documents in the loan file evidence the agreement.
The loan documentation itself prohibits the respondents from alienating or further encumbering the mortgaged property without the consent of the FLBJ. The notes evidence an unequivocal promise by respondents to repay the loan. Nothing in those documents requires the FLBJ to release the collateral from the mortgage.
Respondents point this court to several documents as evidence of the agreement upon which their cause of action is based. These documents include: a document evidencing the advance payment fund policy; various memos to the file evidencing association officers' recommendation to release collateral; actual releases of collateral approved by the FLBJ; and other memos showing the bank officials knowledge of proposals to release collateral. Essentially, the respondents allege that the documents in the record show that the land bank had knowledge of releases and the course of dealing allowed releases. This type of arrangement is exactly what D'Oench and its progeny sought to prevent. None of the recorded information requires the FLBJ to forever release collateral upon request of the borrower. The FLBJ was free to release collateral based on its business judgment, but was not required by agreement to do so.
Even though the respondents were allowed to sell mortgaged property in the past and even though from time to time requests to release collateral were made with the approval or recommendation of association officials, the land bank had to approve the releases. The land bank always prefaced the prior releases with the phrase "Except as herein provided, said mortgage shall remain in Full Force and Effect."
There is no doubt that the parties were able to reach agreements in the past with regard to releasing the collateral. But, the parties never reached an agreement which forever bound the FLBJ to release its collateral. If such an agreement was reached, it cannot now be asserted against the receiver of the failed institution because it was not in writing and evidenced by the loan documents.
In Langley v. Federal Deposit Insurance Corporation, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), at issue was the meaning of the word "agreement" in 12 U.S.C. § 1823(e), the codification of D'Oench. The Supreme Court found that a purpose of 1823(e) is to allow banking regulatory officials to quickly make decisions regarding the fiscal soundness of banking institutions. That purpose would be inhibited if "bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions." The court held that the borrowers' claims and defenses based on an assertion that the failed bank had wrongfully procured the notes through misrepresentations regarding the amount of land borrowers were purchasing and mineral interests in the land, were agreements barred by 1823(e).
Though 1823(e) by its terms applies to the FDIC, both 1823(e) and Langley have *155 been applied by analogy in protecting the FSLIC. Riverfront, supra; Murray, supra. D'Oench provides the foundation for protecting against undisclosed agreements and Langley offers the parameters of the word "agreement"; both of which we apply by analogy to protect REW.
In Beighley v. Federal Deposit Insurance Corporation, supra, the defendant, Beighley, assumed the indebtedness of his closely held corporation, El Rancho Pinoso, Inc. The note he assumed was for $932,000 and was secured by mortgages on immovable property in Tucumcari, New Mexico and Gaines County, Texas. The assumption was part of a plan to reduce Beighley's total indebtedness. As part of that plan it was contemplated by the bank, Moncor Bank, N.A., and Beighley that the Tucumcari and Gaines County property would be sold and the proceeds applied to reduce Beighley's debt. Beighley contended that the bank also agreed to finance the third party purchase of the Tucumcari and Gaines County properties and that they breached that agreement. Therefore, he attempted to prevent foreclosure on the property by the FDIC.
Even though there was evidence in the record which showed that the bank intended to finance the third party purchase, the Fifth Circuit ruled that the agreement could not be asserted against the FDIC as receiver, relying on D'Oench. The court found that the documents in evidence could, when read together, infer an agreement. But, no single document stated that the bank agreed with Beighley to finance a creditworthy buyer for the properties. Beighley, at p. 783.
In Federal Savings & Loan Insurance Corp. v. Two Rivers Associates, 880 F.2d 1267 (11th Cir.1989), a party tried to prevent the FSLIC from foreclosure on mortgages securing promissory notes because the lending institution had purportedly breached an agreement with its borrowers. The FSLIC had acquired the notes and mortgages as receiver for the failed lending institution. The claimant attempted to circumvent D'Oench by arguing that the breached agreement was not "secret." The asserted agreement would have bound the lending institution to fund an entire condominium construction project. Though there were documents in the record which evidenced the lending institution's intent to fund the entire project, the claimant could not show any document which obligated the lending institution to fund the entire construction project. Therefore, the agreement, even if made, was an oral "secret agreement" barred by D'Oench.
As in Beighley and Two Rivers, the documents on which respondents rely do not obligate the FLBJ to release the collateral from the mortgages. While the documents respondents point us to certainly suggest that releases of collateral were contemplated, no document or group of documents in the record evidences an obligation of the land bank to forever release collateral such that it could be sold and the proceeds applied to the debt. Therefore, the agreement is a side agreement which cannot be asserted against REW as the receiver of a failed federal land bank. As in Langley and Beighley, supra, both the affirmative claims and defenses which rely on the side agreement are barred.

THE LOUISIANA UNFAIR TRADE PRACTICES ACT
In their petition, respondents allege that the FLBJ violated the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401 et seq., by the breach of the agreement between the parties. They contend that the FLBJ's failure to release collateral for sale caused the respondents to fail to meet their loan obligations. Respondents allege that the FLBJ, by failing to negotiate with the respondents concerning repayment of the loan installments, has unfairly caused the respondents to be unable to compete in the timber market.
Having already found that the agreement upon which respondents rely cannot be asserted against REW, we conclude that the assertion of the breach of that agreement through the Louisiana Unfair Trade Practices Law is also prevented by D'Oench and its progeny. Respondents *156 cannot allege the agreement to support their breach of contract claim, and should not be allowed to subvert the policies enunciated in D'Oench by asserting the same cause of action as an unfair trade practice. Also, REW's foreclosure on a mortgage held by it does not constitute an unfair trade practice.

FORECLOSURE ON THE MORTGAGES
REW asks that we grant judgment on the notes held by it and recognize its mortgages. Respondents assert that REW is not entitled to summary judgment on its reconventional demand because to do so would deprive them of a remedy against the FLBJ, which is unable to respond to an adverse judgment. Also, they contend that REW is prevented from proceeding with foreclosure by statute, 12 U.S.C. § 2202a(b)(3).
By this first argument, respondents essentially allege that they are entitled to cancel their contract because of the breach by the FLBJ. They assert that cancellation is a proper remedy since the FLBJ cannot respond in damages. Having already found that the agreement which they claim was breached cannot be asserted against REW, there is no merit to this argument.
Secondly, 12 U.S.C. § 2202a(b)(3) provides that:
"No qualified lender may foreclose or continue any foreclosure proceeding with respect to any distressed loan before the lender has completed any pending consideration of the loan for restructuring under this section."
The Grants and Steele assert that the FLBJ has not complied with this section and that REW is therefore prevented from foreclosure.
The Board policy of the Fifth District Farm Credit Banks requires that the borrower submit an application for restructuring. The borrower is given at least 45 days to submit the application after notice of entitlement to restructure. The borrower must provide the land bank with a proposed plan for restructuring with the application. The land bank does not have to consider restructuring unless the borrower submits an application. Respondents have not shown nor does the record reveal that they complied with this section or that consideration of restructuring is pending. Although notice of availability of restructuring was sent to respondents, their application for and plan of restructuring is not in the record. There being no pending consideration of the loan for restructuring under the statute, the statute does not prevent REW's foreclosure in this case.

CONCLUSION
D'Oench and the numerous cases relying on D'Oench all lead us to the conclusion that the type of arrangement upon which the respondents base their claim cannot be asserted against the receiver of a failed federal banking institution. Summary judgment is proper when there is no genuine issue of material fact and mover is entitled to summary judgment as a matter of law. LSA-C.C.P. Art. 966. In this case, REW is entitled to summary judgment as a matter of law.
Respondents' claims constitute oral side agreements which cannot be asserted either as a claim or defense against the receiver of a federal banking institution. The receiver is entitled to rely on the loan documentation in this case which does not bind the FLBJ to release collateral from mortgages so that it can be sold and the proceeds applied to the debt. D'Oench and its progeny prevent such an assertion. Because the agreement upon which respondents rely would alter the loan documentation relied on by REW, its assertion is barred. Also, since the agreement cannot be asserted against REW, the breach of the agreement cannot be asserted as an unfair trade practice against REW.
For the reasons assigned, the judgment of the district court is reversed. The action is remanded to the district court for the entry of summary judgment rejecting plaintiffs' demands against REW and *157 granting applicant's reconventional demand after any additional proceedings which may be necessary to determine the amount due including attorneys fees and costs to be assessed to plaintiffs.
REVERSED AND REMANDED.
NOTES
[1] Respondents were unable to meet their payment on an installment due on January 1, 1985. They borrowed money from Ouachita National Bank to pay the indebtedness and a letter of credit was given by the FLBJ to Ouachita, which was contrary to policy. The letter of credit was paid and the respondents were loaned the additional 1.5 million, pursuant to this transaction.
[2] The FDIC has dual roles. When acting in its corporate capacity it acts primarily as the insurer of deposits. When acting as a receiver its primary function is to marshall the assets of failed lending institutions in protection of the institution's unsecured creditors and shareholders.
[3] Although the FCSIC will enjoy statutory D'Oench protection in 1993, the resolution of this case is not contingent on that regulation. We examine only whether D'Oench in its common law form is applicable to REW.