**FEDERAL LAND BANK OF JACKSON and Federal Land Bank Association of Jackson, in Receivership, REW Enterprises, Inc., Receiver,**

v.

**Richard D. SHAFFETT and Bonnie Arnold Shaffett.**

**Civ. A. No. 90–262–A.**

United States District Court, M.D. Louisiana.

Feb. 1, 1991.

building when the rains came.

---

1. Nor was the damage abstract. A neighboring landowner testified at trial to damage to his

Joseph H. LeBeau, III, Steffes & Macmurdo, Baton Rouge, La., for plaintiffs.

George P. Vedros, Carl W. Cleveland, Cleveland, Barrios & Kingsdorf, New Orleans, La., for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

JOHN V. PARKER, Chief Judge.

This matter is before the court on motion of plaintiff, the Farm Credit Bank of Texas, for summary judgment. Timely opposition has been filed. Oral argument is not necessary. Subject matter jurisdiction is allegedly based upon diversity of citizenship.

■ This is a suit on a promissory note and for recognition of a mortgage securing the note. Subsequent to the initiation of suit, the Federal Land Bank Association of Jackson under Receivership by REW Enterprises assigned all of its interest in the promissory note to the Farm Credit Bank of Texas. The Farm Credit Bank of Texas was then substituted as party plaintiff.

Before addressing the merits it must be noted that on September 13, 1986, defendants filed a voluntary petition in bankruptcy pursuant to Chapter 11 of Title 11 of the U.S.Code. The bankruptcy court approved a plan of reorganization and on January 13, 1988 defendants received a discharge. Plaintiffs also obtained an order from the Middle District of Louisiana's Bankruptcy Court modifying the automatic stay provisions of 11 U.S.C. § 362. This modification permitted plaintiff to institute the proceedings forming the subject matter of this suit.

The complaint alleges that on December 20, 1979 defendants executed a promissory note payable to the order of the Federal Land Bank of New Orleans in the principal amount of $227,000.00. Plaintiff claims that although defendants have made "some payments" on the promissory note, they have failed to pay each and every installment as it matured and therefore defendants are in default. Thus, plaintiff asserts that it has the right to exercise its option to accelerate the maturity of the entire indebtedness represented by the note and demands that the entire balance is immediately due and payable. Accordingly, plaintiff requests judgment against defendants in solido and in rem only in the amount of $277,799.27 and additionally requests the court to recognize the validity and enforceability of its mortgage on the defendants' immovable property.[1]

In answering the complaint, defendants state that in 1988 the Federal Land Bank of Jackson (FLB) gave Mr. Shaffett a written listing agreement allowing Mr. Shaffett to list certain property which the FLB had seized from another debtor. Defendants assert that pursuant to this "listing agreement" the parties agreed that the commissions from the sales of these properties would be applied directly toward any loan balance that defendants had with FLB and that the FLB would forbear on further collection of the indebtedness. Thereafter, defendants state that although Mr. Shaf-

---

1. Defendants originally mortgaged a number of their properties to secure the promissory note. However, plaintiff released all but one of these properties and now only sues on the mortgaged property (attached to the complaint as Exhibit J) located at Sections 84 and 85, Township 2 South, Range 3 East, East Feliciana Parish, Louisiana.

fett actively procured purchasers for the property and that the FLB sold the property to these purchasers, FLB did not apply Mr. Shaffett's commission to his loan balance and informed Mr. Shaffett that they were going to foreclose on the mortgaged property.

In moving for summary judgment, the Farm Bank of Texas alleges that there is no written instrument of any alleged agreement between the Federal Land Bank of Jackson and defendants. Furthermore, plaintiff asserts that the "D'Oench Duhme" doctrine precludes proof of any oral agreement.

In opposing the motion, defendants argue that plaintiff is not entitled to assert the "D'Oench Duhme" doctrine. Alternatively, defendants argue that even if plaintiff is entitled to assert this doctrine, the question still remains whether the "listing agreement" between Mr. Shaffett and the Federal Land Bank of Jackson is a written agreement for forbearance of the collection of the indebtedness.

In *D'Oench Duhme and Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court held that the maker of a facially valid promissory note was estopped from asserting against the Federal Deposit Insurance Corporation a secret agreement that the note would not be enforced. The "D'Oench Duhme" doctrine has since evolved into "a broad reaching federal common law doctrine that applies in favor of federal banking regulatory authorities." *FSLIC v. Silverberg*, No. 88–4739, 1989 WL 59917 (E.D.La.1989). For example, in *Federal Savings & Loan Insurance Corp. v. Murray*, 853 F.2d 1251 (5th Cir.1988), the court extended the "D'Oench Duhme" doctrine to the FSLIC concluding that the "FSLIC does for savings and loans what FDIC does for banks," and because "D'oench and its progeny protect FDIC and FSLIC alike against arrangements likely to deceive a federal regulatory authority." *Murray*, 853 F.2d at

1254. Furthermore, in *Bryan v. Bartlett*, 435 F.2d 28 (8th Cir.1970), the receiver appointed by the Securities Exchange Commission of an insolvent financial services corporation was extended "D'Oench Duhme" protection by way of analogy.

■■■ Thus, it is evident that the "D'Oench Duhme" doctrine has now evolved such that the test of application is whether the borrower lent himself to a scheme or arrangement likely to mislead banking authorities. *Beighley v. Federal Deposit Insurance Corporation*, 868 F.2d 776, 784 (5th Cir.1989). In essence, a debtor will be estopped from asserting in a suit on a note a separate agreement between the lender and borrower which contradicts the written terms of the loan documentation. *Grant v. Federal Land Bank of Jackson*, 559 So.2d 148 (La.App. 2d Cir. 1990). The "D'Oench Duhme" doctrine prevents defenses such as lack of consideration, fraud by bank officials, agreements made in good faith by borrowers, and that course of dealing has altered the loan agreement. *Id.*, citing *Beighley*, supra; *Mainland Savings Association v. Riverfront Associations, Ltd.*, 872 F.2d 955 (10th Cir.1989); *Murray*, supra; *Federal Savings & Loan Insurance Corporation v. Lafayette Investment Properties*, 855 F.2d 196 (5th Cir.1988). Finally, in *Grant*, supra, the court applied the "D'Oench" doctrine to afford the REW, as the receiver of a failed federal land bank, its protection. *Grant*, 559 So.2d at 154. Specifically, the *Grant* court held that even if some agreement was in writing, it was a separate agreement, not part of the loan documentation and therefore its enforcement is "exactly what 'D'Oench' and its progeny sought to prevent." *Id.* Based upon the foregoing, this court concludes that the policy behind the "D'Oench Duhme" doctrine extends to REW Enterpises, as receiver of a failed federal bank, and its assign, plaintiff Farm Credit Bank of Texas.[2] Accordingly, plaintiff's motion for summary

**2.** Defendant failed to submit the alleged written listing agreement to the court and did not subscribe to its existence by way of affidavit. However, even had defendant produced this listing agreement, the "D'Oench Doctrine" would still prevent the extrinsic agreement from varying the terms of the promissory note.

judgment is hereby GRANTED and there will be judgment in favor of plaintiff.

Counsel for plaintiff shall prepare and submit a judgment in accordance with these reasons.