**BELL & MURPHY AND ASSOCIATES, INC., John W. Bell, Jr., Harold D. Barnett, Robert D. Hamer, Jr., and Richard L. Mears, Plaintiffs–Appellants,**

v.

**INTERFIRST BANK GATEWAY, N.A., and Charles E. Jobe, Defendants–Appellees.**

No. 89–1719
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 21, 1990.

Joseph E. Ashmore, Jr., Gregory Shamoun, Vassallo & Ashmore, Dallas, Tex., for plaintiffs-appellants.

Bruce L. Collins, William Frank Carroll, John Mitchell Nevins, Baker, Mills & Last, Dallas, Tex., for defendants-appellees.

Before WILLIAMS, SMITH and DUHÉ, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Bell & Murphy and Associates, Inc., and four of its employees (collectively, "Bell & Murphy") filed suit in Texas state court against First RepublicBank Dallas, N.A. ("Republic"), and Republic officer Charles E. Jobe, seeking monetary damages for alleged fraudulent misrepresentations by the bank. The Federal Deposit Insurance Corporation ("FDIC") intervened as receiver for the insolvent Republic, removed the case to federal district court, and then successfully moved to dismiss Bell & Murphy's claims as barred by the doctrine of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). We affirm.

## I.

■ Like many companies in the oil and gas industry, Bell & Murphy fell upon hard times in 1985.[1] Severe "cash flow" difficulties prompted the company to seek assistance from Republic, its longtime bank, and to agree to an arrangement suggested by bank officer Charles E. Jobe. Under the terms of that agreement, Bell & Murphy was to surrender its accounts receivable and funds from its pension and profit sharing plans to the bank; in return, the bank was to extend open corporate loans and to honor certain checking account overdrafts, thereby enabling Bell & Murphy to stay in business. This agreement was embodied in a letter from Jobe to Bell & Murphy, but it was not reflected in Republic's records.

In April 1988, Bell & Murphy filed suit against Republic[2] in Texas state court, alleging that the bank had induced it to enter the agreement through fraudulent misrepresentations and then had breached its obligations under the agreement. Republic was declared insolvent in July 1988, and the FDIC was appointed as receiver pursuant to 12 U.S.C. § 1821(c). NCNB Texas National Bank, N.A. ("NCNB"), was then named by the FDIC to act as the "bridge bank" to acquire a portion of the assets and liabilities of the failed Republic.[3]

The FDIC then intervened in this action and removed it to federal district court, basing jurisdiction upon 12 U.S.C. § 1819. After considering extensive briefing by both sides, the district court concluded that even if Bell & Murphy's allegations were true, its claims were barred as to the FDIC and NCNB by the *D'Oench, Duhme* doctrine. The court therefore granted the defendants' motion to dismiss.

## II.

### A.

We begin our review of the judgment below with a brief discussion of the history and purposes of the *D'Oench, Duhme* rule. In *D'Oench, Duhme*, the defendant executed a note in favor of a bank in order to deceive state regulators by falsely inflating the value of the bank's assets. The defendant and the bank had agreed that the note would not be called for payment, but, for obvious reasons, this agreement was not reflected in the bank's records. Some years later, the bank obtained a loan from the FDIC, which took a security interest in the defendant's note. When the bank failed and the FDIC sued to collect on the note, the defendant raised the side agreement and also asserted that the note was invalid because it had been given without consideration.

The Supreme Court examined the statutory scheme that created the FDIC and concluded that it evidenced a "federal policy to protect ... [the FDIC] and the public

---

1. We state the facts as alleged in Bell & Murphy's complaint. This is appropriate, because when reviewing a Fed.R.Civ.P. 12(b)(6) dismissal we, like the district court, must accept the material allegations of the complaint as true and construe them in the light most favorable to the non-moving party. *See, e.g., Reid v. Hughes*, 578 F.2d 634, 637 (5th Cir.1978).

2. Jobe also was named as a defendant, but Bell & Murphy does not appeal the judgment in his favor.

3. *See* 12 U.S.C. § 1821(n), authorizing the FDIC's use of bridge banks to acquire the assets and liabilities and to continue the normal banking operations of insolvent banks.

funds which it administers, against misrepresentations as to ... the assets in the portfolios of the banks which ... [the FDIC] insures or to which it makes loans." *D'Oench, Duhme*, 315 U.S. at 457, 62 S.Ct. at 679. In order to effect this federal policy, the Court fashioned a common law rule of estoppel precluding a borrower from asserting against the FDIC defenses based upon secret or unrecorded "side agreements" that altered the terms of facially unqualified obligations.

■ Congress later ratified the result in *D'Oench, Duhme* by enacting 12 U.S.C. § 1823(e), which affords the FDIC, when acting in its corporate capacity, comprehensive protection against any

> ... agreement which tends to diminish or defeat ... [its] interest ... in any asset acquired by it ... unless such agreement (1) is in writing, (2) was executed by the depository institution and ... the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution.

Although the FDIC may not rely upon the enumerated requirements of section 1823(e) where, as here, it acts as receiver rather than in its corporate capacity, *see FDIC v. McClanahan*, 795 F.2d 512, 516 (5th Cir. 1986), it is nonetheless entitled to the protection of the common law *D'Oench, Duhme* rule. *See Beighley v. FDIC*, 868 F.2d 776, 783 (5th Cir.1989). With this background in mind, we now examine each of Bell & Murphy's efforts to take its claims outside the scope of the *D'Oench, Duhme* doctrine.

#### B.

■ Bell & Murphy first advances the argument that the *D'Oench, Duhme* rule bars only claims or defenses based upon unrecorded side agreements that defeat the FDIC's interest in a *specific asset* acquired from a bank. According to Bell & Murphy, the side agreement at issue here, while affecting Republic's total worth, does not diminish the value of Bell & Murphy's admitted outstanding debt to Republic. The side agreement thus could not have misled the FDIC regarding the value of Republic's assets, and *D'Oench, Duhme* does not preclude Bell & Murphy from asserting that side agreement against the FDIC.

■ We find this inventive argument to be meritless in light of our recent holding in *Beighley* that the *D'Oench, Duhme* rule bars affirmative claims based upon unrecorded agreements to extend future loans. There, we noted that the "alleged oral agreement to finance future loans ... [was] not clearly evidenced in the bank's records, and would not ... [have been] apparent to bank examiners." 868 F.2d at 784. Although the agreement that Bell & Murphy seeks to enforce against the FDIC allegedly is embodied in a letter, it was not contained in Republic's records. Thus, it could not have been discovered by bank examiners and is not enforceable against the FDIC.

■ We can dispense easily with Bell & Murphy's contention that the *D'Oench, Duhme* rule bars only claims or defenses based upon *illegal* side agreements entered into for the purpose of deceiving banking authorities. Although the obligor in *D'Oench, Duhme* was in fact a knowing participant in such a fraudulent scheme, the Court there suggested that even a borrower who was "very ignorant and ill-informed of the transaction" and did not "intend[] to deceive any person" would likewise be precluded from asserting defenses based upon unrecorded side agreements that altered the terms of a facially unqualified note. *D'Oench, Duhme*, 315 U.S. at 458–59, 62 S.Ct. at 679–80.

Moreover, courts in numerous subsequent decisions have applied the *D'Oench, Duhme* rule in cases in which the borrower was innocent of any wrongdoing, holding that the relevant question is not whether the secret agreement was itself fraudulent or whether the borrower intended to deceive banking authorities, but rather

whether the borrower "lent himself to a scheme or arrangement" whereby those authorities were likely to be misled. E.g., *Beighley*, 868 F.2d at 784 (quoting *D'Oench, Duhme*, 315 U.S. at 460, 62 S.Ct. at 681). The *D'Oench, Duhme* doctrine thus favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interests of borrowers, who can. *See Langley v. FDIC*, 484 U.S. 86, 94, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987); *McClanahan*, 795 F.2d at 916.

Hence, it is irrelevant to the applicability of the *D'Oench, Duhme* rule whether Bell & Murphy acted in good faith and even whether Bell & Murphy was "coerced," under "economic duress," into accepting the terms of the agreement proposed by Republic. Bell & Murphy could have protected itself by insisting that the bank properly record the agreement; because it did not, it is estopped from asserting any claims arising out of the bank's alleged secret promise to make future loans.

 Relying heavily upon *Howell v. Continental Credit Corp.*, 655 F.2d 743 (7th Cir.1981),[4] Bell & Murphy next contends that the *D'Oench, Duhme* doctrine does not bar its claims because they are based upon the breach of an agreement that imposes obligations upon *both* parties. While *Howell* indeed does contain somewhat expansive language to the effect that the FDIC is bound by bilateral agreements made by failed banks, a close reading of that decision reveals that the bilateral obligations at issue there appeared on the face of the written, properly recorded agreement which the FDIC sought to enforce.

In *Howell*, a bank promised to purchase certain equipment which it would then lease to Howell. The various leases, which were contained in the bank's records, clearly manifested the bank's obligation to obtain title to the equipment. When the FDIC sued Howell to collect payments due under the leases, Howell sought to defend on the ground that the bank in fact had never obtained title to the equipment and that she had never leased it. The court concluded that Howell should be allowed to present this defense, finding *D'Oench, Duhme* inapplicable where "the document the FDIC seeks to enforce is one, such as the leases here, which *facially manifests* bilateral obligations and serves as the basis of the lessee's defense." *Howell*, 655 F.2d at 746 (emphasis added). *See also FDIC v. O'Neil*, 809 F.2d 350, 354 (7th Cir.1987) (noting that the dispositive fact in *Howell* was that "[t]he conditions that Mrs. Howell sought to enforce against the FDIC's asset ... appeared in the asset itself ...").

Here, the alleged bilateral agreement which Bell & Murphy seeks to enforce against the FDIC is unrecorded. Therefore, the narrow exception recognized in *Howell* does not take Bell & Murphy's claims outside the scope of *D'Oench, Duhme*.

 Finally, Bell & Murphy asserts that *D'Oench, Duhme*'s protections, even if applicable, do not bar a recovery against NCNB, the bridge bank authorized by the FDIC to acquire the assets and liabilities of the failed Republic. However, we agree with the FDIC that failure to extend *D'Oench, Duhme*'s protection to bridge banks would undermine the effectiveness of bridge banks as a means of continuing the normal banking operations, and thereby protecting the depositors and creditors, of a failed bank. Moreover, our holding in *FSLIC v. Murray*, 853 F.2d 1251, 1256 (5th Cir.1988), that the *D'Oench, Duhme* rule provides holder-in-due-course status to the FDIC compels the conclusion that assignees of the FDIC also enjoy protection from claims or defenses based upon unrecorded side agreements.[5] Accordingly, we hold that claims barred as to the FDIC by the *D'Oench, Duhme* doctrine likewise are

---

4. *Howell* was cited approvingly by this circuit in *McClanahan*, 795 F.2d at 515.

5. *See also FDIC v. Newhart*, 713 F.Supp. 320, 324 (W.D.Mo.1989) (subsequent holder of note acquired from FDIC also acquires FDIC's holder-in-due-course status); *RSR Properties, Inc. v. FDIC*, 706 F.Supp. 524, 531 (W.D.Tex.1989) (claims barred as to FDIC are equally barred as to bridge bank NCNB because of FDIC's holder-in-due-course status).

barred as to bridge banks authorized by the FDIC to take over the operations of a failed bank.

In sum, we agree with the district court that even if Bell & Murphy's allegations are true, they do not state a claim upon which relief can be granted against either the FDIC or NCNB. Accordingly, the judgment of the district court dismissing Bell & Murphy's claims pursuant to Rule 12(b)(6) is AFFIRMED.