John TORKE, Plaintiff,

v.

**FEDERAL DEPOSIT INSURANCE COR-PORATION as Receiver for Silverado Banking, et al., Defendants.**

Civ. A. No. 89–S–1527.

United States District Court,
D. Colorado.

April 15, 1991.

Albert C. Maule, David B. Goroff, Antony S. Burt, Hopkins & Sutter, Chicago, Ill., for defendants.

Harold A. Feder, Cameron W. Tyler, Feder, Morris, Tamblyn & Goldstein, Denver, Colo., for plaintiff.

## MEMORANDUM OPINION AND ORDER

SPARR, District Judge.

THIS MATTER comes before the court on Defendant Federal Deposit Insurance Corporation's Motion for Summary Judgment and Torke's Request for Sanctions. The court has reviewed the motion and all the related briefs, the exhibits, the applicable law, has heard argument from counsel at the April 4, 1991 hearing, and is fully

advised in the premises. The court hereby incorporates its oral comments made in open court and ORDERS as follows:

## FACTUAL BACKGROUND

This case arises from two cross-collateralized land acquisition and development loans for residential development which Silverado Banking, Savings, and Loan Association made to John Torke on December 13, 1984. The loans were secured by first deeds of trust on two parcels of vacant land and by personal guarantee of Mr. Torke. By their express terms, the loan documents constituted the entire agreement between the parties and there was to be no oral modification of the agreement. (Exhibits 2, 3 at ¶ 17(d)). The loans were modified by three loan modification agreements that extended the time for Torke to fulfill his obligations on the loans. (Exhibits 16, 17). In the last modification, a maturity date of October 1, 1986 was established. (Exhibit 19).

Torke concedes that he did not fulfill the terms of the loan modification agreements. Torke was notified by letters of October 3, 1986 that he was in default under the terms of his notes and that Silverado would commence foreclosure proceedings against the properties. Torke filed suit in state court to enjoin the foreclosure proceedings, but foreclosure was commenced. Torke then filed for bankruptcy, but Silverado obtained relief from the automatic stay and proceeded with the foreclosure.

The bankruptcy trustee, on behalf of Torke's bankrupt estate, initiated the instant civil action in state court on or about September 3, 1987. On December 9, 1988, the Federal Home Loan Bank Board determined that Silverado was insolvent, placed it into receivership, and appointed the FSLIC as receiver. The FSLIC removed this case to federal court on September 7, 1989. In August of 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act, 12 U.S.C. § 1441a. Pursuant to FIRREA, the FSLIC was abolished and the FDIC replaced the FSLIC as Silverado's liquidating receiver and successor to Silverado's assets and liabilities. Torke asserts five claims for relief against the FDIC, all essentially addressing Silverado's declaration of default and foreclosure contrary to agreements allegedly made with Torke: (1) breach of fiduciary duty; (2) deceit and negligent misrepresentation; (3) breach of contract; (4) business tort; and (5) punitive damages.

Torke conceded at the April 4, 1991 hearing that punitive damages are not recoverable against the FDIC as receiver. *See Tuxedo Beach Club Corp. v. City Federal Sav. Bank*, 749 F.Supp. 635 (D.N.J.1990). Therefore, his Fifth Claim for Relief is DISMISSED.

## THE MOTION FOR SUMMARY JUDGMENT

The FDIC moves for summary judgment on Torke's four remaining claims. First, the FDIC argues that Torke's claims are barred by the doctrine articulated by the U.S. Supreme Court in *D'Oench, Duhme & Co. v. F.D.I.C.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and subsequently reinforced by the Federal Deposit Insurance Act of 1950, 12 U.S.C. § 1823(e) and *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). Second, the FDIC argues that Torke has no factual or legal basis for his remaining four claims.

Torke responds that he has both factual and legal bases for his claims. Torke argues that the *D'Oench* doctrine, as reaffirmed by § 1823(e) and *Langley*, does not apply to this case, citing *Grubb v. Federal Deposit Ins. Corp.*, 868 F.2d 1151 (10th Cir.1989). Second, Torke responds that if the *D'Oench* doctrine does apply, his claims meet the four requirements set forth in § 1823(e)(1)–(4). Torke states that he is not alleging any oral side agreements. Rather, Torke refers to Appendix B in support for his argument that the "constellation" of documents meets the requirements of § 1823(e). Appendix B consists of 51 exhibits totalling over 350 pages.

The standard for ruling on summary judgment motions is set forth in Federal Rule of Civil Procedure 56(c). Fed.R.Civ.P. 56 provides in pertinent part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegation or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party.

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lucas v. Mountain States Telephone & Telegraph*, 909 F.2d 419, 420 (10th Cir.1990); *Martin v. Board of County Comm'rs*, 909 F.2d 402, 404 (10th Cir. 1990).

The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing that is sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-movant must come forward with specific facts showing a genuine issue for trial. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The mere existence of some alleged factual dispute will not defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

## CONCLUSIONS OF LAW

■ The *D'Oench* doctrine and § 1823(e) operate to bar both defenses and affirmative claims for relief. *Chatham Ventures, Inc. v. Federal Deposit Ins. Corp.*, 651 F.2d 355, 359 (5th Cir.1981), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982); *Castleglen, Inc. v. Commonwealth Sav. Ass'n*, 728 F.Supp. 656, 664 n. 7 (D.Utah 1989). The doctrine encompasses any claim against an insolvent institution that would either diminish the value of the assets or increase the liabilities of the insolvent institution. *First State Bank v. City and County Bank*, 872 F.2d 707, 716 (6th Cir.1989). The *D'Oench* doctrine provides that the FDIC as receiver may not be held liable for a claim that is inconsistent with the written documents of the failed institution or based on an unrecorded oral or written side agreement. *D'Oench*, 315 U.S. at 459, 62 S.Ct. at 680; 12 U.S.C. § 1823(e); *Langley*, 484 U.S. at 90–93, 108 S.Ct. at 400–02; *Federal Deposit Ins. Corp. v. Van Laanen*, 769 F.2d 666, 667 (10th Cir.1985). Section 1823(e) sets forth the following requirements for a valid claim:

No agreement which tends to diminish or defeat the right, title, or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

First, the court addresses Torke's argument that the *D'Oench* doctrine does not apply. In *Grubb*, 868 F.2d at 1158, the Tenth Circuit found that § 1823(e) and *Langley* did not bar the plaintiffs' fraud claims and defenses because a previous district court judgment had voided the notes that were at issue. Unlike the notes in *Langley*, which were merely voidable when the FDIC acquired them, the notes in *Grubb* had already been voided by the district court judgment when the FDIC purchased the failed bank's assets. *Grubb*,

868 F.2d at 1158. The Tenth Circuit concluded that the judgment provided the FDIC with a reliable record indicating that the notes were void and, therefore, the *D'Oench* doctrine did not apply. *Grubb*, 868 F.2d at 1159. The *Grubb* ruling was limited to the instance where a judgment was entered against a bank prior to the time the financial institution was placed under regulatory control. 868 F.2d at 1158–59. Other courts have limited the applicability of *Grubb*. *See Castleglen*, 728 F.Supp. at 663–64. The court concludes that *Grubb* does not preclude application of the *D'Oench* doctrine in this case.

■ Next, the court examines whether Torke's claims meet the requirements of § 1823(e). The requirements of § 1823(e) are certain and categorical. *Langley*, 484 U.S. at 95, 108 S.Ct. at 403. Torke contends that the numerous documents he presented in Appendix B meet the requirements of § 1823(e) or at least raise factual issues which preclude summary judgment. The court disagrees.

Torke points to a voluminous number of documents in Appendix B without any specificity. He does not focus on the essential controlling loan agreements. One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's official records in evaluating the worth of the bank's assets. *Langley*, 484 U.S. at 91, 108 S.Ct. at 401. The original loan and loan modification documents clearly show all the conditions of the loans and obligations of Torke. There were three written extensions of the loans and four additional requirements for Torke reflected in the loan modification documents. Nothing in the loan documents, security agreements, or modification agreements evidences any agreements upon which Torke can base his claims. At best, Torke's Appendix B raises an inference of agreements made between him and Silverado. An inference of an alleged agreement does not meet the categorical requirements of § 1823(e). *Beighley v. Federal Deposit Ins. Corp.*, 868 F.2d 776, 782–83 (5th Cir. 1989); *Castleglen*, 728 F.Supp. at 669.

■ Torke argues that the *D'Oench* doctrine does not bar his "non-contract claims", citing *Astrup v. Midwest Federal Sav. Bank*, 886 F.2d 1057, 1059–60 (8th Cir.1989). The court concludes that Torke's tort claims are barred. *Astrup* is distinguishable because the claim for breach of fiduciary duty there did not implicate any undocumented agreements, whereas Torke's claims implicate side agreements allegedly evidenced in Appendix B.

■ Even if Torke's claims were not based on any alleged side agreement, his claims would fail because his allegations and evidence do not support his claims. No *per se* fiduciary relationship exists by virtue of the borrower-lender relationship between a bank and a customer of the bank without exceptional circumstances that would establish the existence of a confidential relationship. *First Nat. Bank of Meeker v. Theos*, 794 P.2d 1055, 1060–61 (Colo. App.1990). Torke argues that special circumstances existed that created a fiduciary relationship, among them that Silverado helped put Torke in contact with several people to work with him on the development project, that Silverado controlled Torke's loan disbursements, that Torke was required to report to Silverado regularly and frequently, and that Silverado took an active interest in obtaining the required zoning on the property. These activities were all within the normal course of business between a developer-borrower and a lending institution and do not constitute special circumstances to establish a joint venture or a fiduciary relationship. *See Oliver v. Resolution Trust Corp.*, 747 F.Supp. 1351, 1355–56 (E.Dist.Mo.1990). Also, the loan documents expressly provided that nothing in the loan documents was to be construed as creating a joint venture or partnership. (Exhibits 2, 3 at ¶ 17(c)). In addition, Torke was admittedly in default on his loan obligations. A party to a contract cannot claim its benefits where he is the first to violate its terms. *Western Plains Service v. Ponderosa Development*, 769 F.2d 654, 657 (10th Cir.1985).

ACCORDINGLY, IT IS ORDERED:

1. The FDIC's Motion for Summary Judgment is GRANTED. Torke's First, Second, Third, Fourth, and Fifth Claims for Relief are hereby DISMISSED as against Defendant FDIC. This civil action will continue as between Torke and the one remaining Defendant, Myron S. Roach.

2. Torke's Motion for Sanctions is DENIED.