**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 92-2194
Summary Calendar

RANDOLPH S. JACKSON and MARTHA S. JACKSON,

Plaintiffs-Appellants,

VERSUS

FEDERAL DEPOSIT INSURANCE CORPORATION,
as receiver for MBANK HOUSTON, N. A.,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas
(CA-H-89-1447)

(November 19, 1992)

Before KING, DAVIS, and WIENER, Circuit Judges.

PER CURIAM:[*]

Randolph S. Jackson sued MBank Houston, N.A. (MBank) in Texas state court for breach of contract and promissory estoppel in connection with MBank's refusal to lend money to Jackson despite its allegedly having promised to do so. Before Jackson's

_____

[*]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

case came to trial, MBank was declared insolvent and the FDIC was appointed as receiver.  The FDIC removed the suit to federal district court, and asserted, in a subsequent motion for summary judgment, that Jackson's claims were barred by the D'Oench Duhme doctrine and applicable provisions of FIRREA.[1]  The district court granted this motion for summary judgment.  Agreeing with that court, we affirm.

## I.

## FACTS AND PROCEEDINGS

Jackson was a manager employed by the Monsanto company at its Texas City, Texas petrochemical plant when it was purchased by the Sterling Chemical Company.  As a part of Sterling's purchase, it proposed to sell specified quantities of its own capital stock to named key Monsanto employees at a price of $10 per share.  Jackson was one such employee and was authorized to purchase up to 833 shares of Sterling stock.

Sterling arranged with MBank to provide financing to the former Monsanto employees for their purchase of Sterling stock. MBank agreed to finance sixty percent of the stock purchase price for each qualified employee.  Jackson prepared a loan application and a personal financial statement, and apparently was approved for a $5,000 loan, just over sixty percent of the purchase price for his maximum authorized 833 shares.

Jackson attended the scheduled group closing for these employee stock purchase.  He took with him a cashier's check for

_____

[1]12 U.S.C. § 1811 et seq.

2

$2,000 as his forty percent of the purchase price for the number of Sterling shares that he had decided to purchase))500 shares rather than the full 833 shares authorized. The MBank personnel at the closing tendered a $5000 check to Jackson, but refused to make a smaller loan. Jackson refused the $5,000 loan and instead used his own $2000 to purchase 200 shares of Sterling stock.

Within thirty months, the value of the Sterling stock had skyrocketed,[2] so Jackson filed the subject suit against MBank in Texas state court, alleging breach of contract and promissory estoppel for the bank's failure to lend him the $3,000 for the employee stock purchase. Shortly after MBank filed its general denial, it was declared insolvent and placed under FDIC receivership. The FDIC removed the action to federal court and moved for summary judgment arguing, inter alia, that Jackson's claims were barred by the D'Oench Duhme doctrine and § 1821(d)(9)(A) of FIRREA[3] because the claims were based on unrecorded and unwritten agreements.

The magistrate judge recommended that this motion be granted. At the time that this recommendation was made, the FDIC had produced no documents relating to Jackson's claims. The FDIC

---

[2]The stock Jackson could have purchased for $3,000 in 1986 apparently had increased in value to approximately $500,000 by the time he filed his suit against MBank in 1989.

[3]12 U.S.C. § 1821(d)(9)(a) reads in pertinent part: "[A]ny agreement which does not meet the requirements set forth in section 13(e) [12 U.S.C. § 1823(e)] shall not form the basis of, or substantially comprise, a claim against the receiver or the Corporation." 12 U.S.C. § 1823(e) in turn constitutes a partial codification of the D'Oench Duhme doctrine.

later produced several related MBank documents, which were referenced in Jackson's supplemental response to the FDIC's motion for summary judgment.

The district court subsequently granted summary judgment for the FDIC, adopting the magistrate judge's recommendation without expressly addressing the MBank documents produced by the FDIC after that recommendation had been made. Jackson timely appeals.

## II.

### STANDARD OF REVIEW

The grant of a motion for summary judgment is reviewed de novo, using the same criteria employed by the district court.[4] This court must "review the evidence and inferences to be drawn therefrom in the light most favorable to the nonmoving party."[5] "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6]

---

[4]U.S. Fidelity & Guaranty Co. v. Wigginton, 964 F.2d 487, 489 (5th Cir. 1992); Walker v. Sears, Roebuck & Co., 853 F.2d 355, 358 (5th Cir. 1988).

[5]U.S. Fidelity & Guaranty Co., 964 F.2d at 489; Baton Rouge Building & Construction Trades Council v. Jacobs Constructors, Inc., 804 F.2d 879, 881 (5th Cir. 1986).

[6]Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

4

## III.

### ANALYSIS

Jackson argues that the instant case does not fall within the ambit of D'Oench Duhme because he is asserting an affirmative claim against MBank and the FDIC, rather than a defense to a claim against him. He further asserts that D'Oench Duhme is inapplicable because his claim does not tend to diminish or defeat the FDIC's interest in any particular asset. Jackson claims alternatively that even if D'Oench Duhme does apply to the present situation he has produced sufficient documentation of the loan agreement to defeat summary judgment. We now analyze each of Jackson's arguments in turn.

A. Affirmative Claims

Jackson's initial claim))that D'Oench Duhme does not bar his claim because it is an affirmative claim))is based on a single sentence in one opinion of the Tenth Circuit. In Grubb v. FDIC,[7] that court stated: "By its very terms, however, the D'Oench rule only prevents parties from raising defenses against the FDIC."[8] When viewed in context of the full opinion, however, that statement is recognizable as but one of several alternative bases relied on by the Tenth Circuit for its decision. Further, that statement has been criticized repeatedly by district courts

---

[7]868 F.2d 1151 (10th Cir. 1989).

[8]Id. at 1159.

within the Tenth Circuit.[9]

Of greater significance to the instant case is Jackson's failure to cite the several opposite rulings of the Fifth Circuit))rulings that constitute binding precedent here. We have never refused to apply D'Oench Duhme merely because a party had asserted an affirmative claim rather than a defense against the insolvent institution or the FDIC.[10] To the contrary, we have consistently applied D'Oench Duhme to claims for affirmative relief.[11] Even if we were of a mind to do so, we could not

_____

[9]Adams v. Walker, 767 F. Supp. 1099, 1106 (D. Kan. 1991) ("The Tenth Circuit's statement in Grubb is basically dicta offered without any explanation or analysis . . . . This court does not feel constrained to follow the dicta in Grubb . . . .); Torke v. FDIC, 761 F. Supp. 754, 756-57 (D. Colo. 1991); Castleglen, Inc. v. Commonwealth Savings Ass'n, 728 F. Supp. 656, 664 (D. Utah 1989) (refusing to interpret Grubb as barring the application of D'Oench Duhme to all affirmative claims as "contrary to the great weight of authority and [being] analytically unsound.").

[10]E.g., Texas Refrigeration Supply, Inc. v. FDIC, 953 F.2d 975, 979 (5th Cir. 1992) ("[O]ne who has dealt with a failed FDIC-insured institution may not assert a claim or defense against the FDIC that depends on some understanding that is not reflected in the insolvent bank's records."); Chatham Ventures, Inc. v. FDIC, 651 F.2d 355, 359 (5th Cir. 1981), cert. denied, 456 U.S. 972 (1982) ("The statutory protection of section 1823(e) shields the FDIC from defenses or claims . . . .").

[11]Texas Refrigeration Supply, Inc. v. FDIC, 953 F.2d 975 (5th Cir. 1992) (applying D'Oench Duhme to affirmative claims of breach of contract, negligence, breach of fiduciary duty, promissory estoppel, misrepresentation, breach of good faith, and deceptive trade practices, but not to claims of wrongful acceleration or unreasonable disposal of collateral); Bowen v. FDIC, 915 F.2d 1013, 1015 (5th Cir. 1990) (applying D'Oench Duhme to affirmative claims of promissory estoppel, breach of fiduciary duty and duty of good faith and fair dealing, and constructive fraud); Kilpatrick v. Riddle, 907 F.2d 1523 (5th Cir. 1990), cert. denied, 111 S.Ct. 954, 112 L. Ed.2d 1042 (1991) (applying D'Oench Duhme to affirmative claim of bank fraud); Bell & Murphy & Assoc., Inc. v. Interfirst Bank Gateway, N.A., 894 F.2d 750,

abandon well established precedent in order to follow this questionable alternative ground for the holding in Grubb. Instead, we reaffirm that D'Oench Duhme and FIRREA may bar an affirmative claim against the FDIC, just as it may bar a defense to a claim by the FDIC.

Although Jackson failed to discuss the relevant cases from this circuit in his argument that D'Oench Duhme should only prevent parties from raising defenses to the FDIC, he nevertheless attempts to rebut the FDIC's reliance on Fifth Circuit precedent anticipatorily. Jackson tries to distinguish his situation from previous decisions in this circuit that apply D'Oench Duhme to affirmative claims. He notes that in all cases cited by the FDIC, the party asserting the affirmative claim had some pre-existing borrowing relationship with the bank. In the instant case, however, there apparently was no relationship between Jackson and MBank other than the loan at issue.

We find this to be a distinction without a difference, and clearly one insufficient to prevent the application of D'Oench Duhme to Jackson's claim. Even though in prior cases, ongoing lending relationships may have existed, the existence or nonexistence of such relationships was not dispositive. In neither Bell & Murphy & Assoc., Inc. v. Interfirst Bank Gateway,

---

753 (5th Cir.), cert. denied, 111 S.Ct. 244, 112 L. Ed.2d 203 (1990) (applying D'Oench Duhme to affirmative claims of fraudulent misrepresentation and breach of contract regarding future loans); Beighley v. FDIC, 868 F.2d 776, 783-84 (5th Cir. 1989) (applying D'Oench Duhme to affirmative claims of breach of contract, fraud, breach of fiduciary duty, promissory estoppel and breach of agency contract).

<u>N.A.</u>,[12] or <u>Beighley v. FDIC</u>[13], is there evidence that the plaintiffs were in default on their loans at the times they filed their respective affirmative claims.  Although the FDIC eventually asserted a counterclaim against Beighley to enforce his promissory note, no existing loan played any part in the litigation between Bell & Murphy and the FDIC.

B.    <u>No Specific Asset Involved</u>

Jackson next argues that his affirmative claims against MBank and the FDIC do not involve a <u>specific asset</u> and thus could not diminish or defeat the FDIC's interest in any such asset, thereby preventing application of <u>D'Oench Duhme</u>.  Again, our decisions in <u>Bell & Murphy</u>[14] and <u>Beighley</u>[15] are instructive on this argument.[16]

In <u>Bell & Murphy</u>, the plaintiff entered into an agreement with a bank under which it was to make various loans to the plaintiff.  This agreement was embodied in a letter, but was

---

[12]894 F.2d 750.

[13]868 F.2d 776.

[14]894 F.2d 750 (5th Cir. 1990).

[15]868 F.2d 776 (5th Cir. 1989).

[16]The only reference to either <u>Bell & Murphy</u> or <u>Beighley</u> in the plaintiff's brief to this court is buried in a string cite in support of the unremarkable proposition that <u>D'Oench Duhme</u> "simply precludes the use of any <u>unwritten</u> promise, a promise which does not appear as a written and approved agreement in the records of the bank, as a claim or defense against the FDIC." (Emphasis in original).  In passing we note with interest that Jackson speaks of "claim or defense" in this part of his brief despite his simultaneous assertion that <u>D'Oench Duhme</u> only applies to defenses against the FDIC.

8

never reflected in the bank's official records.  The loans were never made to the plaintiff who sued alleging that it had been induced by the bank to enter the agreement through fraudulent misrepresentations, and that the bank had breached its obligations under that agreement.  The plaintiff in Bell & Murphy argued that its affirmative claim against the bank was not barred by D'Oench Duhme because the agreement in question did not diminish or defeat the FDIC's interest in any specific asset acquired from the bank.  Although the agreement clearly could affect the total worth of the bank, it would not diminish the value to the bank of the plaintiff's admitted debts from other transactions.  In response, this court stated: "We find this inventive argument to be meritless in light of our recent holding in Beighley that the D'Oench Duhme rule bars affirmative claims based upon unrecorded agreements to extend future loans."[17]

Moreover, Jackson's attempted reliance on Olney Savings & Loan Ass'n v. Trinity Banc Savings Ass'n[18] is misplaced.  In Olney, we refused to apply D'Oench Duhme because the FSLIC has acquired no "right, title, or interest" that could be diminished or defeated by Olney's claims.[19]  Prior to the FSLIC take over of Trinity Bank, Olney had sued Trinity successfully for recision of a loan agreement and for damages.  The FSLIC placed Trinity in

[17]Bell & Murphy, 894 F.2d at 753 (citing Beighley v. FDIC, 868 F.2d 776).

[18]885 F.2d 266 (5th Cir. 1989).

[19]Id. at 275.

9

conservatorship after Trinity had already posted a supersedeas bond to stay execution of the damage award to Olney pending appeal. When the FSLIC took over Trinity, the loan agreement had already been declared void; consequently there was no interest for the FSLIC to acquire with regard to the agreement itself.[20] The FSLIC also claimed that it had an interest in the damage award assessed against Trinity. Those funds had already been removed from the assets available to the FSLIC for distribution, however, as a result of the entry of judgment and the posting of the supersedeas bond.[21] Therefore, the FSLIC had no interest that could be diminished or defeated by Olney's claims. In contrast, Jackson's claims had not been determined by the court prior to the FDIC's intervention.

Olney simply is not applicable here. Jackson's claim against MBank and the FDIC, which is based on an alleged agreement with MBank, still tends to diminish or defeat the FDIC's interest in the general assets of MBank acquired by the FDIC. Application of D'Oench Duhme and FIRREA in the instant case is consistent with the established purpose of the doctrine: "Fundamentally, D'Oench attempts to ensure that FDIC examiners can accurately assess the condition of a bank based on its books."[22] Clearly, the financial condition of a bank can be

---

[20]Id.

[21]Id. at 274.

[22]Bowen v. FDIC, 915 F.2d 1013, 1016 (5th Cir. 1990); Langley v. FDIC, 484 U.S. 86, 91-91 (1987).

10

affected by an affirmative claim against the bank as well as by a defense to a claim the bank possesses against a borrower. We hold that Jackson's affirmative claim is subject to D'Oench Duhme and FIRREA.

C.    Sufficiency of the Writing

To avoid conflicting with the requirements of D'Oench Duhme and FIRREA, agreements (such as Jackson's) between borrowers and banks generally must be in writing, and must be properly executed, approved, and recorded in the official records of the bank. In support of his claim, Jackson submitted to the district court the following documents: his personal financial statement; his loan application; Sterling's loan application for the purchase of the Monsanto plant; and Sterling's loan application for the purchase of stock to be used in the employee stock ownership plan. Assuming, without so deciding, that these documents were properly executed, approved, and recorded, they still fail satisfy the requirements of D'Oench Duhme and FIRREA.

Jackson's claim against MBank and the FDIC centers on the bank's refusal to lend him $3,000 for his purchase of 500 shares of Sterling stock. Jackson's loan application states unambiguously that Jackson is applying for a $5,000 loan and that the collateral will consist of 833 shares of Sterling stock. Across the face of this loan application is written: "Customer cancelled loan." The documents on file with the bank establish only that Jackson applied for a $5,000 loan and that he subsequently cancelled that loan. To a bank examiner or anyone

11

else unfamiliar with the facts not contained within the four corners of these documents, they reflect nothing of Jackson's applying for "up to" $5,000 or purchasing "up to" 833 shares of stock. Without more, they do not constitute either a contract with, or a promise by, the bank to loan $3,000 to Jackson for the purchase of 500 shares of Sterling stock. Consequently, Jackson has failed to establish a genuine issue as to the existence of any agreement regarding a $3,000 loan that complies with the requirements of D'Oench Duhme or FIRREA. As the documents produced between the time of the magistrate's recommendation and the granting of summary judgment do not defeat the application of D'Oench Duhme or FIRREA, the failure of the district court to discuss them in the order granting summary judgment is immaterial.

## IV.

### CONCLUSION

Jackson's claim against MBank and the FDIC falls within the ambit of D'Oench Duhme and FIRREA. He is asserting a claim against the FDIC that if successful would clearly diminish or defeat the value of the assets acquired from MBank by the FDIC. The fact that Jackson is asserting an affirmative claim against the FDIC rather than a defense to a claim by the FDIC does not change this analysis. Similarly, our analysis is unaffected by the fact that Jackson's claim does not affect the FDIC's interest in a specific asset, but only in the total worth of the bank.

In response to the FDIC's motion for summary judgment,

12

Jackson produced some documentation of activities among himself, MBank, and Sterling. But, as those documents fail to establish a genuine issue as to the existence of a written agreement meeting the requirements of D'Oench Duhme and FIRREA, expressly evidencing either a loan of $3,000 or one of "up to" $5,000, Jackson cannot prevail. For the foregoing reasons, the district court's grant of the FDIC's motion for summary judgment is AFFIRMED.[23]

---

[23]The FDIC asserts in its brief that Jackson's appeal is frivolous and requests this court to award damages under Fed. R. App. P. 38. The FDIC argues that sanctions are merited because Jackson pursued the appeal of a case governed by well-settled precedent and failed to address squarely that controlling precedent. Although Jackson's appeal demonstrates a multitude of deficiencies, they are not so egregious as to require sanctions. Consequently, we decline the FDIC's invitation.